Clinton M. Campion, Alaska Bar No. 0812105
SEDOR WENDLANDT EVANS FILIPPI LLC
500 L Street, Suite 500
Anchorage, Alaska 99501
Phone: (907) 677-3600
Fax: (907) 677-3605
Email: campion@alaskalaw.pro

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>CORNELIUS AARON PETTUS, JR.,<br><br>        Defendant. | Case No. 3:20-cr-00100-SLG-MMS |

### <u>DEFENDANT'S NOTICE OF EXPERT WITNESS REPORT</u>

Defendant Cornelius Aaron Pettus Jr., by and through counsel, Sedor, Wendlandt, Evans & Filippi, LLC, and pursuant to Federal Rule of Criminal Procedure 16(b)(1)(c), submits the attached expert report from the following individual:

**James W. Borden**
Critical Incident Review
3484 E. Saddle Avenue
Las Vegas, Nevada 89121

Respectfully submitted this 17th day of August, 2021.

SEDOR, WENDLANDT, EVANS & FILIPPI, LLC
Attorneys for Defendant Cornelius Aaron Pettus, Jr.

By: _____/s/Clinton M. Campion_____
      Clinton M. Campion, State Bar No. 0812105
      SEDOR WENDLANDT EVANS FILIPPI LLC
      500 L Street, Suite 500Anchorage, Alaska 99501
      (907) 677-3600 (Telephone)
      (907) 677-3605 (Facsimile)
      Email address: campion@alaskalaw.pro

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically via ECF this 17th day of August, 2021 on:

James A. Klugman

___ /s/Riza Smith_____
Certification signature

NOTICE OF EXPERT WITNESS REPORT
*United States of America vs. Cornelius Aaron Pettus, Jr.*        Page 2 of 2
Case No. 3:20-cr-00100-SLG-MMS

Case 3:20-cr-00100-SLG-MMS   Document 28   Filed 08/17/21   Page 2 of 43



# CURRICULUM VITAE

## JAMES (JAMIE) BORDEN

CRITICAL INCIDENT REVIEW (C.I.R.)

3870 E. FLAMINGO RD. SUITE 511 , LAS VEGAS, NEVADA 89121

(702-373.4737). |. JAMIEBORDEN@CRITICALINCIDENTREVIEW.COM

*Expert: Police Use-of-Force, Police training and related police performance; police procedure; police practice and policy; and forensic video review and analysis.*

## PROFESSIONAL ASSIGNMENTS

**2019-Present:** Founder, The Association of Force Investigators, (AFI) www.forceinvestigators.com
**2018-Present:** Founder, Critical Incident Review (CIR), Lead Instructor and Lecturer, www.criticalincidentreview.com
**2018-Present:** Investigations/Instructor, Forensic Video Investigations and analysis
**2016-Present:** Senior Instructor, Force Science Institute
**2014-present:** Expert Witness; Police Performance Dynamics/ Use-Of-Force/Police Practice and Training/Forensic Video & Audio Examination
**2013-Present:** Staff/Presenter/Educator, Force Science Institute
**2013-Present:** Instructor, Force Science Institute Certification Course/Two-Day Courses
**2007-Present:** Henderson Police Department (H.P.D.) Sergeant (Retired), Henderson, Nevada
**2001-Present:** Videographer/Producer/Editor/Forensic Video Analyst, Studio 824 Video Production
**1997-2006 /2008-Present:** Nevada P.O.S.T. Certified Law Enforcement (Advanced Certificate)

**2008-2018 / 1997-2001:** Police Officer/Sergeant, H.P.D., Henderson, Nevada
*2017-2018: Sergeant, Use-of-Force Training and Analysis Unit, Training Bureau, P.E.A.P.*
*2012-2016: Officer/Sergeant, Use-of-Force Training and Analysis Unit, including Critical Incident Investigations and Review*
*2010-2012: In-Service Training Officer/Officer-in-Charge (OIC), Acting Sergeant, Firearms Instructor*
*2010-2018: Development of the Use-of-Force Training and Analysis Unit, including; 1800+ (perpetual) hours of logged instruction time focused in Use-of-Force, policy, objective reasonableness, decision making, effective communications, de-escalation, force report writing, defeating complacency, firearms, defensive tactics, force-on-force reality-based training, taser, and decision-based simulator training.*
*2011-2018: Patrol relief officer and Patrol relief Sergeant*
*2008-2010: Patrol Officer/Officer-in-Charge (OIC)*
*2000-2001: Undercover Narcotics Detective*
*1997-2000: Patrol Officer/Officer-in-Charge (OIC)*

**1984-1997:** Engineering Technician IV - Roadway & Structural Engineering and Construction, Nevada

Department of Transportation Construction Division; Survey, Materials Testing, Contract Administration, Project Engineering

**CERTIFICATIONS**

2018
- Nevada P.O.S.T. Advanced Police Officer Certification
- Taser Instructor (Taser International)

2017
- Certificate of Completion, Video Examination for the Police Investigator

2015
- Nevada P.O.S.T. Intermediate Police Officer Certification
- Taser Instructor (Taser International)

2013
- Advanced Force Science Analyst Certification
- Excited Delirium Instructor (Institute for the Prevention of In-Custody Death)
- Taser Instructor (Taser International)

2012
- Force Science Analyst (Force Science) Certification
- Certified Litigation Specialist (A.E.L.E.) Americans for Effective Law Enforcement
- NRA Certified Firearms Instructor, handgun and rifle

2011
- Taser Instructor (Taser International)

1997/2008
- Nevada P.O.S.T. Basic Police Officer Certification

**RELEVANT EXPERIENCE**

In July of 2020, I co-founded the Association of Force Investigators with Dr. Paul Taylor. The Association of Force Investigators is a hub for any professional involved in the force investigation, review, analysis, or adjudication process. The AFI provides continuing education for its members, provided by top specialists in their respective areas; biomechanics, psychology, human-factors, investigations, expert work, forensic video examination, human error and more. In February of 2020 I released and began lecturing and certifying participants regarding the investigation of use-of-force incidents; focusing on performance factors, video examinations, and investigator biases coupled with the Cognitive Interview (CI) process. This Certification class has been released under my company, Critical Incident Review, (CIR) (See Certification Class dates below in "Public Speaking and Instruction"). The Cognitive Interview portion of the CIR Certification Course is being taught with intellectual rights permission and the sanctification of Dr. Edward Geiselman. Dr. Edward Geiselman is the co-developer of the Cognitive Interview technique, see attached declaration of Dr. Edward Gieselman. Dr. Gieselman retired as a Professor of Psychology at the University of California, Los Angeles

(UCLA), after over 30 years of service. He has published more than 100 research papers in social-science and police-science journals, and he is the author of five books. Dr. Geiselman has given full authority to Dr. Paul Taylor, myself and CIR to lecture on and certify participants using the concepts related to his material. The material has been refined by me along with Dr. Paul Taylor by focusing the CI process on the investigation of police officers involved in a critical incident.

In 2018, I assisted in the development of the De-escalation Course as well as blocks of instruction on topics such as, Body Worn Camera; Force Investigations. These courses of instruction are currently available through The Force Science Institute.

From 2012 until my retirement in 2018, my position at H.P.D. was focused on the study and application of police performance factors and decision-making as it applies to police practice, training and policy regarding deadly force situations and critical incidents. During that time, I was responsible for the management and oversight of Use-of-Force for H.P.D. This management and oversight included, but is not limited to, investigations of Use-of-Force and critical incidents on the department, policy review, policy writing and Use-of-Force training. I was also responsible for the periodic review of all policies pertaining to force and/or force implementations, i.e., Taser, baton, pepper spray, and others, updating those policies and subsequently training officers of H.P.D. in any revisions and updates to those policies. In addition, I was responsible for the lesson plan development, and presentation, of all Use-of-Force and 4th amendment seizure related citizen contact courses, presented to the following: H.P.D. Citizens' Academy, Regional Law Enforcement Academy (S.D.R.P.A.), and all H.P.D. in-service Use-of-Force Training.

I have a total of 1,370 hours of current and continuing focused education, and application in the field of police officer decision-making and police performance factors as it relates to officer involved critical incidents. I currently have 2,000 hours (in perpetuity) of documented Instruction time as a lead and senior lecturer combined with H.P.D., The Force Science Institute, as well as independent instruction and public speaking. I have 4 years of experience in the application of police performance elements to real world scenarios in investigations, reporting, presenting and application to deposition and litigation with H.P.D., as well as experience as an expert witness in research, report writing, deposition and testimony.

Besides the 30 credits above in criminal justice, I have 15 additional credits with a focus on human behavior and psychology at CSN, the SDRPA Police Academy and The Force Science Institute; 256 hours of Nevada P.O.S.T. certified training hours; and speaking and instruction with H.P.D. (while in service) and The Force Science Institute where I am currently on staff as an instructor in the 50-hour Force Dynamics/Certification Class, the two-day focused presentations, the 4-hour introduction courses, and the two-day Body Worn Camera Class.

I promoted to Senior Instructor with The Force Science Institute, in April of 2016. I train officers from all over the world in police performance dynamics and decision-making as applicable to the law enforcement profession. I was the pilot student for The Advanced Certificate at The Force Science Institute, where I assisted in developing the "Force Science Advanced Specialist" Certification curriculum for all future graduates. I subsequently became the first "Certified Advanced Specialist" for The Force Science Institute.

In addition, I have participated in scientific studies conducted by The Force Science Institute as a consultant, where I assisted in gathering information and recording empirical data on the study and the associated findings. The subsequent study findings and data are peer reviewed and published as industry journals,

industry periodicals, and web-based articles. All of the research conducted by The Force Science Institute is published on the Force Science web site [www.forcescience.org](www.forcescience.org).

With a parallel vocation in videography, I am well-versed and active in pre- and post-video production and pre- and post-audio production, with technical application experience conducting video review in multiple editing software programs including; Input Ace, Adobe Premier Pro, Sony Vegas, Final-Cut Pro, Pro Tools Audio, and Avid, as well as the associated hardware and software used with those programs.

I have interpreted and assisted in the processing of video at the request of The Force Science Institute for the purposes of frame-by-frame analysis and fact finding within my area of expertise. I was involved in video editing and production for a civilian/citizen-based web-site being developed by The Force Science Institute that will educate the public on police-related incidents, with a focus on understanding the police performance dynamic and the elements of police based decision-making in these incidents and the effects on police officers in a critical incident.

Prior to my retirement from H.P.D., I created the Citizens' Academy Use-of-Force block of instruction. I was also the Sergeant in charge of the City of Henderson's Citizens' Academy, educating citizens in our community on critical police incidents and police Use-of-Force. This was a discussion-based course of instruction that encompassed the citizens' perception of police Use-of-Force from the perspective of the media. This class covered police training concepts in the technical aspects of force i.e., firearms training, baton, OC spray and other implementations, but focused on the decision-making process and constitutionally balanced policy and procedure as it applies to police work. Citizens were then given an overview of case law and the application of case law to policy and ultimately the judgment of an officer's decision-making process.

**Use-of-Force Training and Analysis:**
In cooperation with the former Chief of Police of H.P.D. and as a member of the Training Bureau leadership team, I developed and implemented the "Use-of-Force Training and Analysis Position." This Position then evolved into the Use-of-Force Training and Analysis Unit. The responsibilities of this position/Unit entail oversight and management of all aspects of Use-of-Force, Use-of-Force reporting, statistical analysis, trend identification, and force investigations for the analysis of Use-of-Force as an internal function. The position is a resource for line officers, line supervision, management and administration in Use-of-Force reporting, force analysis, force review and administrative force investigations.

**Policy**
In the Use-of-Force Training and Analysis Position, I am also responsible for continuing periodic reviews and updates to the Use-of-Force Policy and associated training. Additionally the position/unit tracks statistical data through accountability software, reviews Use-of-Force reports, reviews all department Use-of-Force in the context of critical incident reviews, and administrative investigations, creates lessons learned presentations and is available to all employees, as a Use-of-Force resource.

**Training**
The position of "Use-of-Force Training and Analysis" was instrumental in critical incident reviews and force investigations for gleaning lessons learned, which are then developed into a lesson plan. The lessons learned were then disseminated to H.P.D. in the form of implemented policy changes, mechanical and discretionary training, and improved pre- and post-preparations for investigations of officer involved critical incidents.

A primary component of this position as an investigator and being in charge of the analysis of force for a department of approximately 500 sworn officers was video examination related to use-of-force. I have extensive training in video examination related to law enforcement and police use of force. (listed below)

### Case Law Pertaining to 4th Amendment and Use-of-Force

A crucial element in these critical incident reviews is knowledge and application of relevant case law regarding Use-of-Force and implementing an analysis and comparison of case law, then integrating into policy and training. In reviewing Use-of-Force and critical incidents, a comparison to the Supreme Court decision of *Graham v. Conner* and the use of the Calculus for Objective Reasonableness as the standard by which Use-of-Force is judged is implemented and applied to each case. The findings are objective and can be applied to policy and training, as well as to better future investigations.

### Critical Incident Investigations: 2012-2018

In this position, I conducted the critical incident reviews of officer involved shootings, Use-of-Force, high liability or abnormal incidents using a checklist encompassing the decision-making analysis, police performance factors and other non-criminal elements. The investigative analysis of an officer involved critical incident is much more involved than a standard criminal investigation and requires a basis for critical time-lines and the decisions made during the incident. The checklist above has been developed and vetted by Critical Incident Review, conceptually introduced through consultation, training and lecturing to departments Nation Wide.

**Mobil Audio Video (MAV) Body Worn Camera (BWC) system implementation**. The Use of Force Training and Analysis Unit was involved in the RFP and testing process for the implementation of both in car and BWC video systems. This process included physical testing of the equipment, developing "needs" and ultimately departmental policy development and training in the use of the device.

The investigation and reviews focus on lessons learned and are compared to current:

- Constitutionality of the Use-of-Force
- Tactics
- Existing Training
- Policy & Procedure
- Department Culture
- Police performance and Incident characteristics Identified During the Investigation

This report is completed and presentable for:
- Identifying lessons learned and recycling those lessons back into the agency as efficiently as possible;
- Corrective actions, counseling and individual training;

- Policy or procedure development and/or changes and updates;
- Identification of training or equipment needs; and
- Ultimately, for any civil purposes that may arise.

This report is the equivalent of a forensic reconstruction investigation of the incident specifically for a civil trial. With this forensic investigation and report being conducted parallel with the criminal investigation, the information is readily available, and no need exists to reconstruct a scene that may be several months old. Lessons learned from this type of investigation range from the involved officers, to involvement of specialized units, and dispatch, to tactics, policy and police best practices.

**Use-of-Force Instruction:**
**In-Service**
Annually, through case review, statistical analysis of H.P.D.'s Use-of-Force cases, and review of yearly Supreme Court cases, I prepared and instructed the Use-of-Force training and lesson plans for H.P.D..

This Instruction includes mechanical training; i.e. court decisions and continued exposure to current case law, the Calculus for Objective Reasonableness, definitions, elements of deadly and non-deadly force and policy review and update, including, but not limited to:

- Updates regarding current applicable case law decisions
- Current Trends in Tactics and Decision-Making
- Report Writing / Documentation / Investigation
- *Graham v. Connor* & Objective Reasonableness
- Excessive Force / Unnecessary Force
- De-Escalation / Resource Management
- Post Incident Management / Care
- Crisis Decision Making

These elements are then incorporated in individual classes for Taser, Less-Lethal, Defensive Tactics, and Firearms instruction for a continuous overlap of pertinent information and lessons learned.

**Academy Recruit Training:**
The "Use-of-Force Training and Analysis" Position was responsible for the training of all new recruits in Use-of-Force and Use-of-Force report writing. I prepared and updated all police academy Use-of-Force lesson plans and submitted for Nevada P.O.S.T. approval. This material was taught to a multi-jurisdictional academy (S.D.R.P.A.)

**Citizens Academy Training:**
I was responsible for the training of our Citizens' Academy in the field of Use-of-Force. I have prepared a course of instruction specifically for the Citizens' Academy that focuses on the education of our community's citizens' in Officer Involved Shootings, media exposure to officer involved critical incidents, and our constitutional standards for using force at any level. During our Citizens' Academy, a 13-week seminar designed to expose citizens to modern policing, I relayed personal experiences, common occurrences and the dynamics that occur in police shootings. We created officer involved shooting scenarios in a simulator and

allowed citizens to feel the effects of stress during a critical incident.  We then walk citizens through the investigation process and convene a mock Use-of-Force board using the citizens, officers and training bureau leadership for a "real world feel" of what occurs during and after an officer involved critical incident.

The citizens that graduate the Citizens' Academy are then used in our department's Use-of-Force Review board, referred to as the Police Action Review Committee or P.A.R.C. process.

Prior to actual Use-of-Force boards, I provided non-incident specific, unbiased instruction to the citizens selected to sit on the board in:

- Constitutional Use-of-Force
- Common Police Procedure and Tactics
- Department Policy
- Police Performance Factors


**Police Action Review Committee member:**
As a non-voting member of H.P.D.'s Use-of-Force board I provided technical data as needed to the board, which included, Deputy Chiefs, Superintendents, upper administration, Sergeants, line officers and three civilians).  During the P.A.R.C., process I was responsible for addressing questions related to:
- Law Enforcement Training
- Police Performance Factors and Police Decision-Making related to police practice, training and policy
- General police procedure and practice
- Equipment Specific Data (Less Lethal, Taser, Firearms)
- Limitations and Context of In-Car Video/Body Worn Cameras and Video Analysis
- Guiding Case Law Related to Law Enforcement

The above information is gleaned through the Use-of-Force Investigation or Critical Incident Review referred to above.

**Virtra300 Training and Decision-Making Simulator:  I** prepared lesson plans in decision-based force and non-force scenarios, Use-of-Force option training, firearms manipulation training, weapons transition training and verbal control and incident diffusion.

**EDUCATION AND TRAINING**
➢ The Psycology of Deadly Force Encounters 60 day reading task w/ seminar.  Dr. Paul Taylor and Dr. Alexis Artwohl
➢ Investigating Human Error – 60 day reading task w/ seminar.  Dr. Paul Taylor
➢ ONLINE VIDEO EVIDENCE TRAINING SYMPOSIUM
  ○ Conducting a Video-Centric Investigation, Grant Fredricks
  ○ Legal Issues and Trends Related to Video Admissibility, Eric Diagle
  ○ Analysis and Interviews for Force Investigations, Dr. Paul Taylor
  ○ Violent Crime Digital Evidence Recovery During Covid-19. How Major Cities Are Adjusting Workflows
  ○ Calculating Accurate Timing From Video, Andrew Fredricks
  ○ DVR Evidence Recovery – The Good, the Bad and the Ugly, Tim Bate
  ○ Photoshop in the Video Analysis Workflow
  ○ Video Evidence and Photogrammetry - From the Field Through Analysis

- DLG Use-of-Force Summit, December 3-5, 2019
  - Use-of-Force current trends
  - De-escalation, Incapacitation
  - Mitigating Tactic Risk
  - Legal Standards for Corrections Use-Of-Force
  - Use-of-Force Review Boards
  - Excited Delirium, what every officer should know
  - Defensive Tactics Application and training issues for corrections
  - How video is being weaponized
  - Priming study for dispatched information
  - Use-of-force Training/quantification and measurement
  - Uncovering hidden evidence in video
  - IA preparation for an OIS internal investigation
  - Read recognize and respond.
  - Force reporting and investigations
  - Public perception of Police Use-of-Force
  - Presenting Officer Involved shooting to a Grand Jury
  - Police and Media Relations
- Force Science Institute - Nervous system, the impact stress has on vision, hearing and memory, and the perceptual distortions that stress can create.
  - Approximately 76 hours of focused study with Dr. Mathew Sztajnkrycre, Dr. David Hines, and Dr. Ann Messer.
- DLG – Use of Force Summit, November 27-30, 2018
  - Use of Force Current trends, Legal standards for policy and training, Eric Daigle
  - De-escalation and mental illness, Eric Daigle
  - De-escalation for training and operations, John McMahon LAPD
  - Arrest related death investigations, Attorney Isaiah Fields, AXON
  - TASER medical research training to mitigate risk, Dr. Donald Dawes, AXON
  - Force Reporting and Force Investigations, Attorney Eric Daigle
  - Use-of-Force Training, Transfer, Deployment and court, Kevin Dillon L.O.C.K.U.P. Training
  - Preparing an internal OIS investigation for Review, LT. Alan Yu
  - Officer Involved shootings, a different perspective, Attorney Eric Daigle
  - Tactical Communication and De-escalation, Cpt. Shawn Case
  - Force reporting for the Instructors, Cpt. Shawn Case
- Force Science - Association of Force Science Conference, October 22-26, 2018
  - Science in the courtroom, Eric Daigle Esq., (Use of force Expert, Advanced Specialist)
  - Preventing Tragedies through the application of Human Factors and performance issues. Mike Ranalli Chief (Ret.)
  - Law Enforcement Training, Lon Bartel, SME Virtra Simulator.
  - The Bridge from De-Escalation to the Use of Force: Legal & Behavioral Considerations,  Von Kliem J.D., (Judge Advocate, U.S.Army)
  - Training and Pre-Force Conduct, Chief Gorge Villegas, LAPD.
  - Optimal Case Preparation for Officers and Experts.  Cory Brente J.D., LAPD
  - Application of Human Factors to Use of Force Analysis and Courtroom Proceedings. Chris Butler, Inspector (Ret.) Canada.
  - Vehicle Dynamics and Officer Responses. Chris Lawrence, Ontario Police College at Ministry of Community and Social Services, Instructor.
  - Principles of Training, Performance, and Learning, Chris Butler, Inspector (Ret.) Canada
- Occam Video Solutions, Instructor Training in Forensic Video Examinations, Boulder, CO 16-hours – July 2018
- Occam Video Solutions, Training forensic Video Examination; Preparation for instructor status - Grant Fredericks Video Solutions. June 5-6, 2018, Vancouver, British Columbia
- Use-of-Force Summit Connecticut. November 2017:
  - Use-of-Force Legal Standards for Policy and Training- Eric Daigle;
  - Implications of Vision Perception, Cognition & Decision Making for Use-of-Force Trainers- Chris Butler;
  - Use-of-Force – Training, Transfer, Deployment and Court – Kevin Dillon;
  - Self-Inflicted Video – How police agencies use video against themselves - Grant Fredericks; and
  - Legal Reporting and Force Investigations – Eric Daigle.

➢ Video Forensics – Video Examinations for the Police Investigator 5/2017
➢ Video Forensics – Introduction, Grant Fredricks, 3/2016
➢ Southern Nevada Law Enforcement Academy- Basic Police Academy, 1997
➢ Southern Desert Regional Police Academy – Basic Police Academy, 2008
➢ Force Science Analyst - Force Science Institute 50-hour, 2012
➢ Force Science Analyst – Force Science Institute 16-hour 2013
➢ Force Science Advanced Analyst – Force Science Institute, 400-hour focus study- text books 2013
➢ Interview and Interrogation –Henderson Police Department, Ed Gieslman 2014
➢ Anti-Terrorism Training – LVMPD Metro
➢ Taser Instructor- Taser International
➢ Management, Oversight and Monitoring Use-of-Force- AELE
➢ Officer-Involved Lethal and Less Lethal Use-of-Force- AELE
➢ Use-of-Force, Deadly Force and Officer Involved Shootings- P.A.T.C.
➢ Supervisor's Role in Managing the Use-of-Force Incident-American Council on Criminal Justice Training
➢ Instructor Development- FBI
➢ Developing Defendable Lesson Plans- IPICD, Inc.
➢ Excited Delirium Instructor- IPICD, Inc.
➢ American Heart Association CPR & AED Instructor, AHA
➢ Arrest-Related Death, Excited Delirium & Sudden In-Custody Death- IPICD, Inc.
➢ Handgun Instructor- Henderson PD
➢ Advanced Academy Training- H.P.D.
➢ Tactical Handgun Instructor- National Rifle Association
➢ Cognitive Interview Technique- Ed Geiselman, Las Vegas Metro PD
➢ Rolling Surveillance- RSI, Inc.
➢ Highway Interdiction- Desert Snow
➢ Meth Labs (Phase V)- Desert Snow
➢ Field Training Officer- Kaminsky & Associates
➢ Use-of-Force Summit 2014 – Daigle Law Group
➢ Use-of-Force by the Numbers – Institute for the prevention of in custody deaths Inc.
➢ Lethal & Less Lethal Force – A.E.L.E.
➢ Management, Oversight and Monitoring of Use-of-Force – A.E.L.E. update
➢ First Responder Training Program – Department of Homeland Security


**ADDITIONAL LAW ENFORCEMENT TRAINING**
Bullet Proof Mind, Lt. Col. Grossman, 2010
Pain Behind the Badge, Clark Paris, 2010
Terrorist Liaison Officer, H.P.D. 2010
Electronic Control Weapons, Legal Updates, Jack Ryan, P.A.T.C. Public Agency Training Council.
Less Lethal Force, Orleans Hotel, A.E.L.E., Americans for Effective Law Enforcement 2012.
Use-of-Force By the Numbers, John Peters, I.P.I.C.D.  2012
Glock Armorer, Sammy Paris, 2013
Arresting Communication, HITDA, Jim Glennon, 2013
Ultimate in Survival Instincts, Lifeline Training & Calibre Press. 2013
Street Survival, Calibre Press, 2013
Force Science, Officer Involved Shooting, Force Science institute, Salt Lake City, 2013
IPICD, Restraint Symposium, 2014
Force Science, legal Issues, Officer Involved Shootings, 2014
Use-of-Force Summit, Jack Ryan, Las Vegas NV, 2014
FEMA, Emergency Management Institute, Introduction to Incident command, 2008
FEMA, Emergency Management Institute, ICS for Single Resources and Initial Action Incidents, 2008
FEMA, Emergency Management Institute, ICS National Incident Management System, 2008
FEMA, Emergency Management Institute, ICS National Response Framework, 2008

Department of Homeland Security, First Responder Program, 2010

**Police Officer Standards of Training P.O.S.T. Training Hours**.
Delivering Constructive Criticism. City of Henderson, State of Nevada POST No. P0000492
Body Language. City of Henderson, State of Nevada POST No. P0000445
Assertiveness and Self Confidence. City of Henderson, State of Nevada POST No. P0000349
Anger Management, City of Henderson, State of Nevada POST No. P0000445
Crimes Against Persons, City of Henderson, State of Nevada POST No. P0000361
Attention Management, City of Henderson, State of Nevada POST No. P0000443
Mentally Ill, legal issues, City of Henderson, State of Nevada POST No. P0000465
Juvenile Justice City of Henderson, State of Nevada POST No. P0000493
Flying Armed, City of Henderson, State of Nevada POST No. P0000470
Business Ethics, City of Henderson, State of Nevada POST No. P0000350
Coaching and Mentoring, City of Henderson, State of Nevada POST No. P0000356
Civility in the Work Place, City of Henderson, State of Nevada POST No. P0000448
Call Center Training, City of Henderson, State of Nevada POST No. P0000447
Law Enforcement Customer Service, City of Henderson, State of Nevada POST No. P0000378
Public Speaking, City of Henderson, State of Nevada POST No. P0000403
Negotiation Skills, City of Henderson, State of Nevada POST No. P0000387
Departmental Interpersonal Skills, City of Henderson, State of Nevada POST No. P0000377
Emotional Intelligence, City of Henderson, State of Nevada POST No. P0000366
Conflict Resolution, City of Henderson, State of Nevada POST No. P0000358
Communications Strategies, City of Henderson, State of Nevada POST No. P0000357
Critical Thinking, City of Henderson, State of Nevada POST No. P0000449
Employee Motivation, City of Henderson, State of Nevada POST No. P0000450
Problem Solving, City of Henderson, State of Nevada POST No. P0000360
Crimes Against Property, City of Henderson, State of Nevada POST No. P0000362
Leadership & Influence, City of Henderson, State of Nevada POST No. P0000380


## SPECIAL ASSIGNMENTS / POSITIONS

**January 2019- Member of the Human Factors & Ergonomics Society**

**July 2018-** I was invited to join the N.I.S.T. Nation Institute of Science and Technology, as part of the work group, WK61808: Simple measurement for CEW output.

**Sergeant, Use-of-Force Training & Analysis Unit, Training Bureau & Police Employee Assistance Program 2017-2018 encompassing all of the below from a supervisory position.**

**Use-of-Force Training and Analysis Officer 2012-2016**
- Forensic video review related to use-of-force
- Review Officer Involved Shootings, Use-of-Force and Critical Incident Analysis
- Use-of-Force Trainer
- Firearms & Simulator Trainer
- Lesson Plan Development
- Instructor Development
- Continuing Education for L.E. Employees
- Policy Review & Development
- C.A.L.E.A. Statistical Analysis

**Training Officer (2010-2012)**

**1997/2001 – 2008/2011    Patrol Officer (OIC- Officer-in-Charge)**

- Basic Patrol Functions
- Supervise Both Senior and Junior Officers in Patrol Operations
- Review/Approve/Reject Crime, Accident, Investigation and Use-of-Force Reports
- Directed and Managed Officers During Critical Incidents and Police Investigations
- First Responder to Homicides, Officer Involved Shootings, Suicides, Suspicious Deaths, Robberies, Suspicious Persons, and Other Police-Related Activities
- Conducted First Responder Mental Health Assessments and Involuntary Mental Health Holds
- Handled Administrative and Supervisory Tasks (Payroll, Evaluations, Coaching and Counseling)

**Public Speaking Instructor/Clinician (2002-2008)** *private sector*

**2008 – 2010    Patrol Officer (OIC- Officer-in-Charge)**

**2000 – 2002    Detective-Narcotics Unit**

- Plainclothes Operations
- Buy/Bust Operations
- Covert Surveillance
- Search Warrants
- Interviews
- Worked with Repeat Offender, Narcotics, Robbery and Homicide Units.

**1997 – 2000    Patrol Officer / Field Training Officer / Bike Squad / Firearms instructor (OIC- Officer-in-Charge)**

**INSTRUCTOR EXPERIENCE**
**In-Service instructor – H.P.D. – Henderson, NV (2012-2018)**
Full-Time Training Officer, In-Service Training for a 500-Officer Agency:
- Advanced Specialist, Lecturing on expert witness Testimony (2019-2021)
- Body Worn Camera Class, forensic video investigation for police officers (2017-2021)
- Force Science Force Dynamics/Certification Class (National) Senior Instructor
- Realities of De-Escalation (Force Science Institute)
- Essentials in Police Performance Factors and Police related Decision-Making
- Investigations related to the analysis of force incidents
- Use-of-Force in Service Patrol and Corrections
- Use-of-Force Report Writing
- Citizens Academy: Use-of-Force
- Regional Academy: Use-of-Force
- Taser (Certified)
- Firearms (Handgun & Rifle)
- Defensive Tactics (Adjunct)

- Emergency Vehicle Operations (Adjunct)
- CPR & Emergency First Aid

**Public Speaking & Presentations/Instruction and lectures Related to Police Use-of-Force and Police performance and dynamics**

- Association of Force Investigators (AFI), Succeeding as an Expert, 60-day reading curation, Seminar-Webinar. www.forceinvestigators.com 4/2021
- Tempe AZ, Force Investigative Strategies; Cognitive Interviewing Certification Course 04/2021
- Mason OH, Street Cops Perspective; Critical Force Dynamics-Human Factors 04/2021
- Pepperdine University, SOL Class – Use-of-Force, investigative Review and Analysis, Opinions and conducting objective reviews. 03/15/2021
- Mesa AZ, Mesa Police Department/multi-Jurisdiction - Force Investigations; Video Analysis, Review and Examination. 02/22/2021
- Miami-Dade, Force Investigation Strategies; Cognitive Interviewing Certification Class 02/2021
- Greater Salt Lake City Jurisdictions - Force Investigation Strategies; Cognitive Interviewing Certification
- Class 01/2021 Little Rock AR - Force Investigation Strategies; Cognitive Interviewing Certification Class 12/8-10/2020
- Webinar – Calibre Press, The Dynamics, Science and Liabilities of Force Events. 11/17/2020 (sold out) 1000 participants.
- Tempe AZ - Force Investigation Strategies; Cognitive Interviewing Certification Class 11/10-13/2020
- Video Examination Seminar: AFI – "See it for what it is." 8/2020
- International Law Enforcement Training Symposium, Investigator Influence on Force Investigations/Officer Interviews related to Officer involved Critical Incidents, C.I.R. July 23, 2020
- Input Ace Training Symposium - Investigator Influence on Force Investigations/Officer Interviews related to Officer involved Critical Incidents, C.I.R.  June 2-5, 2020
- San Bernardino - San Bernardino Sheriff's Department, Force Investigation Strategies and Cognitive Interviewing, C.I.R. March 12-13, 2020
- Atlanta, GA - S.I.F.I.R. Conference, Force Investigative Strategies and Cognitive Interviewing February 25-26, 2020
- Ontario, CA – Force Dynamics/Certification Class, - January 9-13, 2020
- Fort Lauderdale, FL - Force Dynamics/Certification Class, - December 9-13, 2019
- DLG-Use-Of-Force Summit, Force Investigations and Police Performance Dynamics, Dec 3-5
- Miami-Dade, FL. Two-Day Fundamentals/Force Dynamics and Decision-Making, December 2-3, 2019
- Dickenson, ND. Two-Day Fundamentals/Force Dynamics and Decision-Making, Multiple Jurisdictions November 7-8, 2019
- Chicago, IL. Force Dynamics/Certification Class, - November 4-8 2019
- Omaha, NE Force Dynamics/Certification Class, - October 21-25, 2019
- Ocean City, MI. Chiefs and Sheriffs Conference.  Use of Force Dynamics October 12, 2019
- San Bernardino, CA. Two-Day Fundamentals/Force Dynamics and Decision-Making/Force Dynamics and Decision-Making, multiple Jurisdictions October 8-9, 2019
- Las Vegas NV, Fundamentals – Arizona Homicide investigations Conference

- Braintree MA, MA Chiefs of Police, Force Investigations, Police Performance Dynamics. September 26, 2019
- Alexandria VA, Force Dynamics/Certification Class, Homeland Security - September 23-27.
- Lenexa KS, Three-Day Fundamentals with Video review component. Sept. 18-20
- Ocean City, MD. Lecture at Chiefs of Police &Sheriff's Conference.
- Crested-Butte, CO. Two-Day Fundamentals/Force Dynamics and Decision-Making/Force Dynamics and Decision-Making, Crested-Butte CO./multiple Jurisdictions August 26-27, 2019
- Miami-Dade FL. Two-Day Fundamentals/Force Dynamics and Decision-Making/Force Dynamics and Decision-Making, Miami-Dade/multiple Jurisdictions July 30-August 1, 2019
- Pineville LA. Two-Day Fundamentals/Force Dynamics and Decision-Making, US Marshals SPEC OPs group July 17-18, 2019
- Greensboro NC.  Investigative strategies, Internal Affairs Conference. July 12-13,2019
- Harrisburg, PA. Two-Day Fundamentals/Force Dynamics and Decision-Making, June 12-13, 2019 (106)
- Aurora, CO.  Force Dynamics/Certification Class, June 3-7, 20199 (105)
- Santa Rosa, CA. Two-Day Fundamentals/Force Dynamics and Decision-Making One-Day Video Examinations (104)
- Connecticut Chiefs of Police Association, Police Performance Dynamics, Force Investigations and Video Examinations. C.I.R. May 21-23, 2019 (103)
- Nashville, TN Force Dynamics/Certification Class, May 6-10, 2019 (102)
- Spokane, WA Two-Day Fundamentals/Force Dynamics and Decision-Making One-Day Video Examinations class April 29-May 1, 2019  (101)
- Kansas City, KS Two-Day Fundamentals/Force Dynamics and Decision-Making Class April 23-24, 2019 (100)
- Hillsboro, OR Video Examinations, C.I.R.
- Des Moines, IA One Day Fundamentals FSI, Video Examinations- C.I.R. April 18, 2019
- Jamestown, NC. Force Dynamics/Certification Class, April 9-10, 2019
- Austin TX, Force Dynamics/Certification Class, April 1-5, 2019
- San Diego CA, IACP Legal Officers Track, Investigations Lecture
- Seattle WA, Force Dynamics/Certification Class, March 10-14, 2019
- Henderson NV, Force Dynamics/Certification Class, February 24-29, 2019
- San Francisco CA, Force Dynamics/Certification Class, February 4-8 2019
- Harrisburg PA, Foundational Principles Course, January 30-31 2019
- Scottsdale AZ, Force Dynamics/Certification Class, Multiple Jurisdiction, January 14-18, 2019
- Orlando FL, Force Dynamics/Certification Class, Multiple Jurisdiction, December 10-15, 2018
- Hartford CT, DLG – Use of Force Summit, November 27-30, 2018
  - Use of Force and Bio-Mechanics/decision making in crisis
  - Use of Force Investigations and video review
- Henderson NV, Force Dynamics/Certification Class, Multiple Jurisdiction, November 12-16, 2018
- Austin Texas, Department of Public Safety, Force Dynamics/Certification Class, Multiple Jurisdiction, October 29, 2018
- Chicago IL., Directors Invited Guest Speaker, Association of Force Science Conference, October 24, 2018
- Chicago IL., Multiple Jurisdiction, Body Worn Camera Class, FSI, October 23, 2018
- Sacramento, CA. Multiple Jurisdiction, FSI Force Dynamics/Certification Class October 1-5, 2018

- Cumberland, IN. Multiple Jurisdiction, FSI Three-Day Police Performance Factors and Body Worn Camera Class. C.I.R. October 9-11, 2018
- Knoxville, TN. Multiple Jurisdiction, FSI Force Dynamics/Certification Class October 1-5, 2018
- Kansas City, MO. Multiple Jurisdiction, FSI Force Dynamics/Certification Class September 10-15, 2018
- Body Worn Camera Class, Oklahoma City, OK, September 5-6, 2018
- Assistant instructor, Forensic Video Investigations for Law Enforcement, Boulder, CO. July 9-10, 2018
- St. Louis MO., Virtra Simulator, FSI Two-Day Police  Performance Elements, July 19-20, 2018
- Aroura, CO. Multiple Jurisdiction, FSI Force Dynamics/Certification Class June 5-9, 2018
- Westhampton NJ, Multiple Jurisdiction, FSI Two-Day Police Performance  Elements, May 24-25, 2018
- Chicago IL, Multiple Jurisdiction, Force Science Certification Course, 2018 May 21-25
- Evansville IN, Multiple Jurisdiction, FSI Two-Day Police Performance  Elements, May 15-16, 2018
- Alexandria VA, Multiple Jurisdiction, Force Science Certification Course, 2018 April 30-May 4
- Santa Rosa CA, Multiple Jurisdictions, FSI Two-Day Police Performance Elements, Basics April 24-25, 2018
- Chicago IL, Multiple Jurisdiction, Force Science Certification Course, April 15-19, 2018
- Montrose CO, Multiple Jurisdictions, Two-Day Police Performance Elements, Basics April 9-10, 2018
- Glynco GA, United States Marshal Service and ATF F.L.E.T.C. April 2018
- San Diego CA, Multiple Jurisdiction, Force Science Certification Course, January 22-26, 2018
- Orlando FL, Realities of De-Escalation Class, FSI January 30-31
- 2018 Scottsdale AZ, Multiple Jurisdiction, Force Science Certification Course, December 11-15, 2017
- Orlando FL, Multiple Jurisdiction, Force Science Certification Course, December 11-15, 2017
- Chicago IL, Multiple Jurisdictions, Realities of De-Escalation Class, FSI Nov 8-9, 2017
- Clackamas OR, Two-Day Presentation for Training Officers, October 24-25, 2017
- Boston MA, Multiple Jurisdictions, Daigle Law Group, One-Day Course for Investigations October 18, 2017
- Boise ID, Multiple Jurisdictions, Force Science Institute Two-Day class, August 31-1, 2017
- Orlando FL, Realities of De-Escalation Class, FSI August 3-4, 2017
- Huston TX, National Tactical Officers Association, Legal Summit, June 20, 2017
- Harrisburg PA, Multiple Jurisdiction, Force Science Certification Course, May 8-13, 2017
- Aurora CO, Multiple Jurisdiction, Force Science Certification Course, June 5-9, 2017
- Chicago IL, Multiple Jurisdiction, Force Science Certification Course, May 8-13. 2017
- Las Vegas, NV, Multiple Jurisdiction, Force Science Certification Course, April 10-14. 2017
- Fort Collins CO, Multiple Jurisdictions, Force Science Institute Two-Day Class, October 2017
- Austin TX, Multiple Jurisdiction, Force Science Certification Course, February 20,  2017
- Scottsdale AZ, Multiple Jurisdiction, Force Science Certification Course, January 23-27, 2017
- National Tactical Officers Association, S.H.O.T. Show, Las Vegas NV. January 17, 2017
- DLG Use-of-Force Summit, Mohegan Sun Resort, Uncasville, CT November 28 - December 1, 2016
- Hillsboro OR, Multiple Jurisdiction, Force Science Institute Force Dynamics/Certification Class November 13–18, 2016
- West Valley UT, Multiple Jurisdiction, Force Science Institute Force Dynamics/Certification Class October 22-26, 2016
- ATOA, Arizona Tactical Officers Association.  Public Speaking Police performance  Factors and Tactical Application
- Wichita KS, Multiple Jurisdictions, Force Science Institute Two-Day Class, October 2016

- IACP, International Chiefs of Police, Legal Officers Section, Public Speaking on Police Performance Factors and the Legal Standard.
- Bakersfield CA, Multiple Jurisdictions, Force Science Institute Two-Day Class, September 2016
- Scottsdale AZ., Multiple Jurisdictions. Force Science Institute Force Dynamics/Certification Class, September, 2016
- Garfield County, CO. Multiple Jurisdiction, Force Science Institute Force Dynamics/Certification Class June 20-21, 2016
- N.T.O.A.  National Tactical Officers Association, Legal Defense Summit, Chandler AZ, June, 2016
- FBI NAA, California Law Enforcement Executive Development Seminar, Lake Tahoe, May, 16, 2016
- A.P.O.A. Juneau AK, May 10-12, 2016
- Redwood City, CA, April 25-26, 2016
- Chicago IL, Force Science Institute, April 11-12, 2016
- Little Rock, AR, April 1-2, 2016
- LVMPD, LV NV, LVPPA March 23, 2016
- Milford CT, One-Day with the Daigle Law Group Multiple Jurisdiction, March 17, 2016
- Modesto CA, Two-Day Force Science Class, March 13-14, 2016
- Las Vegas NV, Force Science Certification Course, February 8-12, 2016
- Davenport IA, Two Day Course, February 2016
- Austin TX, Certification Course, January 2016
- Dallas, Fort Worth TX, Two-Day Course, January 2016
- DLG – Use-of-Force Summit (Uncasville, CT), December 2015
- Richmond VA, Virginia State Police, Two-Day Course, November 2015
- Chicago IL, Force Science Institute, Certification Course November 2015
- Fairfax VA, Department of Homeland Security, Two-Day Course November 2015
- Lansing MI, Michigan State Police, Two-Day Course, October 2015
- San Antonio TX, Certification Course, October 2015
- Chicago IL, Force Science Institute, Certification Course, September 2015
- Tactical Development Conference (Aurora, CO)- September 2015
- Lakewood Washington, Two Day Course, August 2015
- Salem OR, Oregon Department of Public Safety, Two-Day Course, June 2015
- Alexandria Virginia Dept. of Homeland Security, Certification Course, May 2015
- FBI National Academy Associates, Inc. (Sacramento, CA), May 2015
- California Peace Officers Association (Sacramento, CA), May 2015
- Chicago IL, Force Science Institute, Certification Course, April 2015
- Hayward CA, Hayward City Hall, Certification Course, March 2015
- Seattle WA, Washington State Criminal Justice Training Commission, February 2015
- Henderson NV, Henderson Police Department, Certification Course, January 2015
- Centennial CO, Certification Course, August 2014
- Madison WI, Certification Course, July 2014
- Alexandria VA, Department of Homeland Security, Certification Course April 2014
- Department of Homeland Security (Washington, DC) 2013

**Awards & Commendations**
- Miami-Dade, Certificate of Appreciation for presentation. September 2019
- MD Chiefs of Police, Certificate of Appreciation. September 12, 2019
- Central Indiana Chiefs, Certificate of Appreciation for presentation June 2019
- Arizona Tactical Officers Association, Award for Appreciation of Service, October 2016
- International Association of Chiefs of Police (I.A.C.P.), Legal Officers Section Appreciation for Service, October 2016.
- FBI Certificate of Appreciation, FBI CAL-LEEDS
- FBINAA, Academy Associates, California Chapter – Appreciation for Service May 16, 2016
- 2013 Henderson Police Department Training Officer of the Year
- Leadership Award, Henderson Police Department 2008


**Department Awards & Commendations**
- S.O.A.R. (Safety Officers Recognition Award) State of Nevada, September 2016
- PERF Nomination for Innovative Police Practices (Creation of the "Use-of-Force Training and Analysis" Position)
- C.A.L.E.A. Gold Standard for Excellence Related to Use-of-Force Training and Policies
- I.C.M.A., Named the "National Model" for Use-of-Force and Associated Training and Policy Practices
- I.A.C.P. cited H.P.D. as One of the Top Five Most Innovative Police Departments in Use-of-Force Management and Oversight, Featured on Webs Edge TV at I.A.C.P. 2014

**Articles and Videos and Published Work**
- Policy Matters, Vegas Beat Magazine May 2016 available at http://digital.911media.com/i/678564-may-june-2016.
- Winning Mind Training interviews www.winningmindtraining.com
  - Development of a Use of Force Training and Analysis Unit
  - Digital video review – technical limitations of video
- Development of rote behavior, https://CriticalIncidentReview.com (briefing discussions)
- ILETS – Investigator Influence on Video Examination. International presentation of the International Law Enforcement Training Symposium. July 2020
- AFI – Succeeding as an Expert – Lecture
- Article – Opinions without Foundation, LinkedIn – Calibre Press 2021
- De-Escalation – Scenario breakdown, Calibre Press, CIR 2020

*Re:* **State of Alaska vs. Cornelius Pettus**
Court Case No.: **3AN-19-10036CR**
DA Case No. **PBK0946640**
Agency Rpt. No. **19-35650**

Incident Date: September 30, 2019
Trial Date: TBD

## CASE REVIEW & EXPERT REPORT.

DATE: August 8, 2021

TO: **Clinton M. Campion**
**Sedor, Wendtlandt, Evans & Filippi**
500 L Street, Suite 500
Anchorage, Alaska 99501

Attorney for Defendant
Anchorage, AK

CASE TYPE: Criminal.

DEADLINES: TBD

## 1. OVERVIEW & INTRODUCTION.

I am an expert in police performance dynamics as they pertain to use-of-force, use-of-force decision-making and reaction timing, police practice and policy, forensic video analysis and examination. A summary of my qualifications is included below, as well as in my curriculum vitae ("CV").

This is a summary of opinions and conclusions regarding the incident referenced above. I will make myself available as feasible for testimony and request that defense counsel assists to facilitate such testimony on a workable date, time, and location to be confirmed.

**A.** **Table of Contents.**

## Contents

1.    OVERVIEW & INTRODUCTION. ...................................................................1

    A.    Table of Contents. .........................................................................2

2.    Purpose ......................................................................................3

3.    SUMMARY OF PERTINENT INCIDENT FACTS. ...............................................3

    A.    Summary of Key Facts and/or Record/Evidentiary Citations. ..................4

        1.    Case facts Considered in this Analysis ...............................4

        2.    Officer's Plan and Action. ............................................6

        3.    Initial contact and use-of-force .....................................6

        4.    Statements And Evidence In Corroboration (reports/video). .....6

4.    EXPERT ANALYSIS, OPINIONS, AND CONCLUSIONS. ...................................7

    A.    Executive Summary of Opinions............................................7

    B.    Extended Analyses, Opinions, and Conclusions. ........................8

5.    STATEMENT RE CERTAINTY OF OPINIONS..........................................14

6.    EXHIBITS TO REPORT. .....................................................................14

7.    KEY TERMINOLOGY & OFFICER TRAINING..........................................14

8.    METHODOLOGY SPECIFIC TO MY INVESTIGATIVE REVIEW AND ANALYSIS. ....................................................................................16

    A.    General Methodology. ....................................................16

    B.    Case-Specific Methodology. .............................................18

9.    Digital Video Evidence Provided ......................................................19

10.    Methodology Video analysis ..........................................................20

11.    DOCUMENTS & EVIDENCE REVIEWED/CONSIDERED (MATERIALS). ............20

    A.    Reference Materials Considered...........................................20

12.     FEE SCHEDULE. ...................................................................................21

13.     CURRICULUM VITAE (C.V.). ...........................................................22

        A.      Summary of Qualifications....................................................22

        B.      Summary of Area of Expertise. ............................................24

14.     LIST OF PERTINENT EXPERT TESTIMONY.................................24

15.     RIGHT TO AMEND. ...........................................................................24

**2.      Purpose**

        The purpose and scope of this report is to conduct a review and analysis regarding the incident related *specifically* to the use-of-force in subduing and controlling the subject of the contact, Samuel Allen (Allen).

        Additionally, this report documents the procedures utilized to confirm the integrity regarding any video used in exhibits or relied upon in association with the captioned case.

        Prior to the examination of the video evidence, I completed a series of analytical procedures regarding the digital camera footage in question. These processes included: frame analysis, frame rate verification, and an examination of the related audio stream. I have received the original video files to my knowledge along with the proprietary player and required execution files for the video. I have also received an MP4 version of the video evidence.

**3.      SUMMARY OF PERTINENT INCIDENT FACTS.**

        *This summary is provided for convenience and does not necessarily itemize every single fact relied upon in the formation of my opinions and conclusions in this matter. It is based on my review of the records and materials identified herein below. I do not contend to have direct personal knowledge of the incident facts and rely on the documentation and other evidence provided to me.*

        This case arises out of a September 30, 2019 incident that occurred at approximately 10:31 p.m. at 1402 Nelchina Street, Anchorage, AK, involving Officer Aaron Pettus (Officer Pettus) and Officer Deorman Stout (Officer Stout).  On the above date and time Officer Pettus and Officer Stout responded to the above referenced address to serve three traffic related citations on the resident, Samuel Allen.  Allen, who was residing at this address, answered the door after officers

knocked. Officer Pettus is heard explaining the citations Allen was being served with,[1] then seen turning and leaving the residence to return to his police vehicle. Allen was recorded on his own cell phone and is heard being immediately verbally offensive and aggressive. Allen was shouting for Officer Pettus to come back after Officer Pettus had finished his official police business. Officer Pettus and Officer Stout paid no attention to Allen and continued to walk back to their police vehicles, disengaging from Allen. Once Officer Pettus and Stout neared their vehicles and were in view of the Mobile Video Cameras (MVC), Allen can be seen approaching Officer Pettus. Officer Pettus grabbed the mobile phone from the grip of Allen and stated to him that the phone was evidence of the crimes he had been cited for. The cell phone was being used to record Officer Pettus, however this is not the reason Officer Pettus stated the phone was taken. At this time, it appears that Allen was within arm's reach of Officer Pettus, and Officer Pettus pushes Allen away from him. Allen then continued to close the distance between himself and Officer Pettus when Officer Pettus struck Allen with a closed fist in the left side of the face.[2] Allen does not appear to move backwards, away from Officer Pettus. Officer Pettus responds to this by aggressing Allen with a kick to the lower body. Allen, stated to be relatively calm, was then handcuffed, and medical was immediately called to check his welfare. Allen was subsequently arrested for the assault on Officer Pettus. It should be noted OC Spray was used and ineffective during the encounter.


### A.    Summary of Key Facts and/or Record/Evidentiary Citations.

The following facts or records contained particular significance to my analysis.

#### 1.    *Case facts Considered in this Analysis*

The following facts and circumstances were known by Officer Pettus based on his report made at the time of the incident and the statements made by Officer Stout. These facts were considered in the review and analysis of this case. Please note: only information known to the officers at the time of the incident and the use of force is considered in this analysis. Facts known after the review are identified but not necessarily associated with what the officers *could* have known, or *should* have known:[3]

   a.   Fact: Officer Pettus is a Sworn Law Enforcement Officer in the State of Alaska.
   b.   Fact: Officer Pettus and Officer Stout were wearing Anchorage Police Department (APD) police duty uniforms with patches, badges and firearms.
   c.   Fact: Officer Pettus had legal standing to issue citations for the associated infractions that he observed approximately one (1) hour prior to serving the citations to Allen.

---

[1] Cell phone video phone yanked, punched, then maced...2019-12-18_10-06-33.mp4
[2] Allen is seen in the video evidence with a clenched fist and what was described by Officer Pettus as a fighting stance.
[3] Information known to the officers or reasonably believed to be accurate by the officers at the time of the use-of-force.

d. Fact: Officer Pettus had the opportunity to address Allen in the field at the location of the citable offenses.

e. Fact: Officer Pettus chose not to address Allen in the field due to the known history of Allen and his antagonistic behavior towards law enforcement.

f. Fact: Officer Pettus had knowledge of Allen's identity and place of residence and opted to deliver the citations where there was less inflammation regarding the contact.

g. Fact: Officer Pettus did not attempt to deliver the citations alone and waited for Officer Stout to arrive prior to making contact.

h. Fact: Once the citations were explained and physically entrusted with Allen at the location, Officer Pettus disengaged from any further contact with Allen.

i. Fact: Allen immediately became vocally abusive and offensive toward Officer Pettus.

j. Fact: Officer Pettus did not respond in any way to the offensive behavior of Allen as Allen stood inside of his residence and yelled expletives at officers and directed them to "come back."

k. Fact: Allen proceeded to leave his residence and approach Officer Pettus as he (Pettus) returned to his vehicle along with Officer Stout.

l. Fact: Allen approached Officer Pettus aggressively,[4] slamming the door to his residence and closing the distance between them with purpose while yelling expletives.

m. Fact: Officer Pettus grabbed the cell phone quickly and stated there was evidence of the citable offenses on the phone.

n. Fact: Allen closed in on Officer Pettus again and Officer Pettus pushed him backwards and away. Officer Pettus then trying to maintain distance again.

o. Fact: Officer Pettus was clear by his actions that he did not want Allen to be close to him and that he was trying to avoid confrontation, walking away a second time.

p. Fact: Allen continued to close the distance between them and, Allen appears on video to be assuming an aggressive stance toward Officer Pettus.

q. Fact: Allen closed the distance until he was within approximately two (2) feet of Officer Pettus with an aggressive demeanor.

r. Fact: Officer Pettus struck Allen with a closed fist on the left side of his face. (This strike did not knock Allen down).

s. Fact: Allen continued to stay close to Officer Pettus and presented a perceivable threatening stance.[5]

t. Fact: Officer Pettus kicked Allen in the lower leg area to move him backwards and away from him.

u. Fact: Officer Pettus at some point deployed OC Spray which was ineffective; this cannot be seen in the video evidence, however, the *effects* of the OC spray can be observed in the video evidence.[6]

v. Fact: Officer Pettus quickly requested medical attention due to the fact Allen was struck in the face, and, because Officer Pettus sprayed Allen with OC Spray while he was being lawfully detained for additional crimes.

w. Fact: Officer Pettus called for a supervisor to respond to the scene.

---

[4] Stout interview 000338, describing the aggressive behavior.
[5] See still shot, page XXX of this report.
[6] Spray residue can be seen on the chest of Allen.

x.  Fact: Officer Pettus was donning weapons, both lethal and non-lethal.[7]

y.  Fact: Allen was antagonistic and aggressive towards law enforcement, making decisions to engage officers in the course of their lawful duties.[8] Rather than file complaints with the department, and/or attending to the citations in the manner that a reasonable citizen would be expected to.

z.  Fact: Allen was subsequently arrested and booked for multiple offenses.

### 2.    *Officer's Plan and Action.*

Officer Pettus had a lawful goal and objective in issuing citations to Allen for the citable offenses he witnessed prior to delivering the citations to Allen's residence.  Since Officer Pettus was familiar with Allen's antagonistic history with law enforcement, and considering the fact Allen's identify was known, the decision was made to *not engage* Allen in the field.  Officer Pettus believed serving the citations later would reduce the potential for confrontation.  Officer Pettus waited for a back-up officer (Stout), and the citations were delivered to the front door of Allen's residence.  After the citations were explained and left in his control at the front door, Officer Pettus disengaged and walked away from Allen's residence.  Additionally, Officer Pettus attempted to walk away after the first aggressive contact with Allen occurred near the front of his patrol vehicle.  Officer Pettus was not inclined to charge Allen with any other crimes during the contact.  Because Allen was in his home, although resistant to Officer Pettus's attempts to deliver the citations, Officer Pettus made a conscious decision to walk away from the encounter with no further confrontation.

### 3.    *Initial contact and use-of-force*

During the initial contact with the suspect (Allen), Allen was immediately antagonistic with Officer Pettus.  The contact was specifically related to the lawful goals and objectives identified by Officer Pettus in his report which was completed on the night of the contact.  Officer Pettus engaged physically with Allen only in response to his (Allen's) behaviors and actions during the contact, and not through malevolent intentions.

### 4.    *Statements And Evidence In Corroboration (reports/video).*

The account given by Officer Pettus regarding the interaction is from his perspective with reasoning based on his stated thoughts and perceptions at the time.   These stated

---

[7] This is a consideration when officers are being aggressed. There are always weapons in a fight when an officer is involved. Officers' decisions in protecting their space is based partly on the fact that if a struggle ensues these weapons are then potentially accessible to the suspect.

[8] Other options were available for Allen to voice his disdain for law enforcement.

perceptions were consistent with the other statements and the video evidence. The *officer's* perspective is reliant on the context of the incident in which they were operating and based on lawful goals and objectives. That is, Allen was resistant/non-compliant and Allen continued to make decisions that forced Officer Pettus to respond in kind. Officer Pettus could not have known the reasons for the non-compliance and unpredictable behavior, *only* that the behavior was occurring. Additionally, the behavior from Allen was consistent with the dangerous behavior he was known for. These facts were confirmed and supported in the video evidence and statements made by Officer Pettus and Officer Stout.

## 4.   EXPERT ANALYSIS, OPINIONS, AND CONCLUSIONS.

**Based upon the records and evidence in this case, and other files listed within this report, and based on my background, training, education, and experience, these are my opinions thus far in this matter:**

### A.    Executive Summary of Opinions.

1.      **It is my opinion** that the efforts, tactics, and decisions made by Officer Pettus in this case, to use force, were consistent and relative to Allen's behavior. Allen was perceived as aggressing Officer Pettus as he (Pettus) attempted to disengage.

2.      **It is my opinion** that the use of the OC Spray was a pragmatic decision although not effective. Officer Pettus was able to gain the compliance of Allen quickly, who was acting unpredictably and unreasonably. Officer Pettus responded to the perceived threats from Allen with an appropriate level of force.[9] It should be noted: Citizens have an obligation and a responsibility to acquiesce to the efforts of police officers for the safety of themselves, the officers, and other citizens.

3.      **It is my opinion** that Officer Pettus had a plan to minimize the potential of a confrontation with Allen and reasonably attempted to maintain a non-escalated contact. By attempting to disengage, Officer Pettus showed a high level of commitment to a non-escalated contact. It is my opinion that the ability to maintain a non-escalated contact was ultimately incumbent on the actions of Allen.

4.      **It is my opinion** that Officer Pettus appropriately used force as per training, policy and accepted practice given the facts and circumstances of this scenario. Officer Pettus used empty

---

[9]  Officer Pettus applied an intermediate level of force based on the actions of Allen.

hand tactics and OC Spray to subdue Allen, quickly placing him in handcuffs, and getting medical assistance for the well-being of Allen.  My observations are based upon the information available to me in this case, including video evidence, reports and statements made by involved officers and witness officers.

5. **It is my opinion** that the force being applied by Officer Pettus during the interaction with Allen ceased immediately after Allen complied and was placed in handcuffs and restrained. Officers continued to treat and care for Allen for the duration of this event. It is also an objective fact that Allen was not suffering from any significant injuries connected to the use of force.

B. **Extended Analyses, Opinions, and Conclusions.**

1. **Analysis: Training Considerations.** It should be noted that officers *are not* expected to experiment with lesser levels of force based on articulable threats being posed by the subject of the contact [Allen].  Additionally, the level of force used by officers was effective in controlling and subduing Allen, and, in quickly reaching a level of de-escalation.[10]

> *In 1989, the United States Supreme Court applied an objective standard to a force situation and further established how reasonable force must be judged objectively (Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865) (1989)).  The Court's analysis began by considering the subject's Fourth Amendment right to remain free from any unreasonable seizure against the government's interest in maintaining order through effective law enforcement. The Court noted that determining the objective reasonableness for the use of force must be fact specific, and established the following four components for determining reasonableness:*
> *The reasonableness of a particular use of force must be...*
> - *judged from the perspective of a reasonable officer.*
> - *examined through the eyes of an officer on the scene at the time the force was applied, not the 20/20 vision of hindsight.*
> - *based on the facts and circumstances confronting the officer without regard to the officer's underlying intent or motivation.*
> - *based on the knowledge that the officer acted properly under the established law at the time.*

---

[10] Interview with Stout - things go from dynamic to static and even ALLEN had come down quite a bit. They just kind of hang out and he waits for another officer to arrive on scene. Illustrating the De-escalating effect of the force used. Page 2 of 11 000388

2.     The above section is not to be considered an application of law regarding the reasonableness of the force used, however, this is the standard used in training and reflected in APD Policy.[11]  Based on this element of police officer training and exposure to the objective standard outlined therein, Officer Pettus used force within the parameters outlined in APD Policy.

3.     **Analysis: Consequentialism**. In conducting an investigation, a review or an analysis of the event, there is much more information known consequentially[12] to the investigators or those conducting a review. It is important to recognize that the officers did not have the luxury of knowing much of is the data available to investigators after the event resolves.  The totality of facts and circumstances known to the officers at the time of the use of force is considerably limited when compared to the facts and circumstances known to investigators after the fact.  Officer Pettus was responsive to the behavior of Allen.  Allen could have made the decision to pursue his issues in a court of law, which is what the issuance of a citation is designed for. However, Allen made the decision to pursue Officer Pettus in an aggressive manner. Officer Pettus did not attempt to engage Allen, rather, he (Officer Pettus) responded to Allen's engagement of him.

4.     **Opinion: Professionalism**. Officers Pettus displayed a professional approach to preventing potential safety issues and the potential need to escalate the level of force need.  Officer Pettus responded to the actions of Allen, but also showed reverence for the well-being of Allen in providing medical assistance for him at the earliest time possible.  Officer Pettus maintained a directed and professional demeanor with Allen after Allen was restrained and arrested.

5.     **Opinion: Police Tactics**.  Based on statements made by officers, the tactics used by Officer Pettus appeared to be sound and purposeful.  Officer Pettus used the level of force required and necessary to control and subdue Allen, which also proved to be effective.  The decisions outlined in the officers' statements from the time Allen followed officers to the patrol cars, until the time Allen was subdued and controlled, appeared to be in line with Department Policy, training, and protocols regarding this type of scenario.  Once Allen was no longer perceived as a threat, the use of force ceased and Allen was handcuffed.

6.     **Opinion: Assessment and Decision-Making**. Officer Pettus was definitively responsive to Allen's actions and behavior. Officer Pettus identified the threat posed by Allen as such using all the contextual cues available to him at the time of the interaction with Allen. Please note: An officer ***is not required*** to wait until a suspect physically engages in terms of non-compliance, resistance or combativeness. The officer is not required to wait to be struck before reacting to a subject who is non-compliant, particularly when there are other potential threat issues. The totality of the circumstances related to the behavior being encountered was the basis for the

---

[11]  APD Policy, 3.05.025 section F, Use of Force Standards, references to Graham in policy
[12]  Terminology, this report section  7 page 21 XXX

decision-making process. Officer Pettus was reactive to the actions of Allen and made rapid decisions regarding the control and detention of Allen. Discretion at that moment belonged to Officer Pettus based on all the factors addressed in this section and addressed in APD Policy.[13] It should be noted that officers faced with facts and circumstances make decisions on the *probability* of an attack, not the *possibility*. This probability is based on everything that has happened up to the point that the decision to use force is made. The officer is forced to "predict" the outcome or potential result if they chose to use force or if they don't use force. In this incident, based on all the threat cues and the behavior of Allen, the probability was, from Officer Pettus' perspective, that Allen would have assaulted Officer Pettus as described in his report.

7. **Opinion: Aggressive Stance.** Below are still shots extracted from the video evidence showing the stance of Allen stated as an aggressive or fighting stance:

 

  

---

[13] APD Policy Use-of-Force.

8.    **Policy Analysis**.  Each factor listed in the policy must be compared to the facts and circumstances the officers knew at the moment of the use-of-force. This data quantifies the officers' decision-making process and allows for an *objective review* of the officers' *subjective perspective* of the incident.

**Use of Force – General:**[14]
- **Defend themselves.**
- Defend Others.
- Effect an arrest or detention.
- Prevent Escape; or
- Overcome resistance

Based on the facts of this incident, the above general factors are met based on the obligation Officer Pettus had to de-escalate and control this unpredictable scenario.

**Factors to determine reasonableness:**
- **The seriousness of the crime or the suspected offense;** *The seriousness of an assault on an officer is exacerbated by the fact that the officers are armed with lethal and non-lethal weapons that are considered at risk should the assault evolve into a struggle. The officer has no way of knowing the intentions of the subject, the strength, or other distortions that may put the officer at a disadvantage in a fight.*
- **The level of threat or resistance presented by the subject.** *Allen immediately became antagonistic towards officers. With Officer Pettus walking away to avoid escalation as a deliberate tactic, Allen's decisions were his own and out of the control of Pettus. Officer Pettus became responsive to the reasonably perceived threat posed by Allen.*
- **Whether the suspect was posing an imminent threat to officers or a danger to the community;** *Based on the above bullet point, the officer's perspective, according to statements from Officer Stout and the visual confirmation of threatening behavior, was that Allen posed an imminent physical threat of harm to Officer Pettus.*
- **The potential for injury to citizens, officers or the subject;** *Based on the above-mentioned contextual factors, it is assumed by police officers that a subject behaving unpredictably and aggressively is a potential danger to the officer and to themselves.*
- **The risk or the apparent attempt by the subject to escape;** *Escape was not a consideration in this incident.*
- **The amount of time and any changing circumstances during which the officer had to determine the type and amount of force that appeared to be reasonable;** *This*

---

[14] PROCEDURES: A. USE OF FORCE AUTHORIZATION AND LIMITATIONS **APD Policy**

*was an especially subjective factor regarding what the officer knew the moment that force was applied. Allen aggressed Officer Pettus and showed no intentions of relenting and, Officer Pettus did not achieve compliance until he used physical force on Allen. The circumstances and Allen's behavior only changed after the application of force. Time compression affecting the decision-making process is unpredictable in this scenario. We can only assess after the fact. The totality of the circumstances is what drove Officer Pettus' decision to use force under the compression of time in this event. Officer Pettus responded quickly to end the perceived threat of Allen engaging him in a fight.*

1. **Analysis: objective v. subjective.** Officers are trained, and gain experience through handling critical incidents in terms of what level of force and the type of force required to de-escalate different types of encounters. The force used by officers is based on facts and circumstances ***known to the officer at the time***; not the facts and circumstances learned after the fact or during the investigation. Officers are making decisions on incomplete or, in some cases, incorrect information. Consequentially, judging an officer's actions based on what is known after the fact is not the standard captured in the *objective standard*.[15] Policy, and the legal standard reflected therein, outline how force is judged, not how force is trained or how force is used in events that are always unique to themselves.

2. **Opinion (Performance Dynamics). Threat Cues.** Officer Pettus was making decisions based on information in real time through effective and constant assessment. Officer Pettus had an identifiable reason to control, subdue, defend against, and restrain Allen based upon Allen's actions.[16] Based upon the involved officers' statements, video footage, and information from witnesses, the officers' decisions were being made in light of the actual behavior of Allen, and not mere potential threats. All decisions were being made in a reactive nature based on the behavior of Allen. The statements made by officers and confirmed by video are facts that occurred - these facts have not been refuted by any other individuals who were present at the scene.

3. **Opinion: De-escalation**. Officer Pettus made every effort to achieve de-escalation through the use of tactics identified in this report, responding with physical force only to control and de-escalate Allen's perceived combative behavior. De-escalation is dependent on the subject being controlled and the actions of that subject.

   a) **Analysis:** De-escalation is mistakenly viewed as a tactic, and is perilously misinterpreted and misunderstood by investigators, attorneys, and peace officers alike. In law enforcement, ***de-escalation is a desired result***, achieved by the application of any number

---

[15] (*Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865) (1989)*
[16] APD Policy Use-Of-Force procedurel.

of tactics, chosen by a person of authority, based primarily on the actions of the subject to be controlled. ***De-escalation is not a specific tactic, but a composite of all tactics***, starting with officer presence or disengagement. Peace officers are trained to start a contact at the lowest level of force possible, based upon the nature of the contact itself. However, the nature of the contact and tactics continue to be dependent on the subject's behavior and the context of the incident. In some instances, it may be preferable to use verbal tactics as the lowest force possible, but only when it is feasible under the circumstances. If the subject is willing to acquiesce to verbal commands and become compliant or cease resisting, cease aggression, and cease combativity, de-escalation might be successfully achieved through the use of verbal commands. Conversely, if the subject refuses to obey verbal commands and does not respond with compliance to the use of a lower level of force (i.e., attempts at verbal communication and hand gestures), lower levels of force have proven to be ineffective in stopping the subject's non-compliance or aggressive and potentially violent behavior. In such cases, multiple tactics or levels of force have been attempted and have been *unsuccessful* in achieving de-escalation. Officer Pettus showed keen assessment and proper tactics by choosing to disengage in an attempt to de-escalate the situation without the use of force (despite Allen's behavior at the time of the contact, and despite Allen's unpredictable actions as experienced by Officer Pettus upon the onset of the contact). Notably, the use of force by a peace officer *is* authorized in response to non-compliance, resistance, and combativeness, when other options have failed or would be unsuccessful. Given the circumstances Officer Pettus was faced with, as described in this environment, Officer Pettus increased the level of force definitively and quickly. The incident was de-escalated based on Officer Pettus's rapid re-actions, avoiding any other potential issues given the environment.

4. **Conclusion re Force**. Based upon the totality of circumstances described herein, Officer Pettus' decisions to use force were consistent with generally accepted departmental training, current case law referred to in applicable training, department policies, and APD training.[17] Officer Pettus' attempts at disengaging from Allen prior to Allen pursuing officers out of his residence were unsuccessful through no fault of Officer Pettus. The decisions made by Allen are what Officer Pettus reacted and responded to in defense of himself. It is my opinion that the threat cues described were accurate based on all the other corroborative evidence available to me in this case. It is my opinion that an individual's general behavior[18] is not what ultimately dictates the enforcement of laws; instead, it is an officer's discretionary authority. It is my opinion that if the laws are important enough to enforce, it is up to the officer to responsibly enforce those laws and minimize the need to use force. The tactics discussed in this report and

---

[17] My opinion on these issues is from a police performance dynamic/timing and context perspective, related to law enforcement use of force decision-making, with that focus. To the extent that Defendant designates a separate police practices area, I do not expect to offer cumulative/duplicative testimony at trial.

[18] General behavior towards law enforcement, antagonistic behavior, fear of confrontation etc. do not override an officer's discretion on when to enforce laws and what laws to enforce. Officer Pettus took viable steps to prevent a confrontation.

the thoughtful approach to issuing citations at a later time where confrontation could be minimized, was a viable and purposeful approach to this scenario. Allen, in essence, made the decision to bully officers as they attempted to disengage. Allen *could have and should have* addressed his issues with the citations or the contact with Officer Pettus through other means. Allen could have handled his disapproval through the court system, lodged a complaint with Officer Pettus' supervisor, etc. Engaging Officer Pettus in an aggressive manner is reasonable cause for Officer Pettus to respond to the encounter with the use of objectively reasonable force. The level of force used by Officer Pettus was an intermediate level of force, it was effective, and the incident was quickly de-escalated, at which time Allen was given proper medical attention. The central question that must be addressed regarding this incident is: Was the use-of-force reasonable based on the totality of the facts and circumstances? Furthermore, the main question of focus here is not: Should Officer Pettus have enforced the laws of the city of Anchorage to avoid criminal behavior from a known criminal?

5. **Disclaimer re Opinions**. Note: None of my opinions are intended to usurp the province of the jury and are not stated as ultimate conclusions.

## 5.      STATEMENT RE CERTAINTY OF OPINIONS.

All opinions stated by this expert are made to a reasonable degree of scientific or technical probability where human performance factors are considered, or certainty based upon this expert's review of the available known forensic and witness evidence, as well as this expert's background, training, and experience.

## 6.      EXHIBITS TO REPORT.

Any exhibits that I anticipate referencing at the time of trial which have not, to my knowledge and information, already been produced to the opposing parties, are either included in the body of this report or attached as exhibits to this report. This report accurately summarizes my conclusions/opinions in this case, and the methodology and evidentiary and other foundation underlying such conclusions.

## 7.      KEY TERMINOLOGY & OFFICER TRAINING.

**Consequentialism.**      This refers to the notion that an officer cannot necessarily know/predict the outcome of his/her actions and reviewing them in hindsight can create a distorted picture or memory. In consideration of the term "consequentialism," there was no way for a peace

officer to effectively or definitively identify the intentions of a suspect other than by the suspect's actions during the incident. Also, consideration must be given by an officer to the pre-existing information known about the subject or received from dispatch from within the department's communication system, "radio calls," and information being observed upon arrival.

**Time Compression**. This term refers to any phenomenon that alters the qualities of, and relationship between time, distance, speed, and motion, i.e., the threatening actions of a person towards another person that diminishes the meaning of distance in relationship to the ability of the victim to respond in a timely fashion in order to defend against the threatening action (also referred to as "action v. reaction").

**Focus of Attention**. Attention is the process peace officers are trained in regarding selectively concentrating on a discrete aspect of information, which can be either subjective or objective, while unable to attend to other perceivable information. It is the taking possession by the mind, in clear and vivid form, of one object out of what seems to be several simultaneous objects or trains of thought. Focalization and concentration of consciousness are at the core of what constitutes "attention." Attention has also been referred to as the allocation of limited processing resources. (Anderson, 2005).

**Threat Cues**. The identification of threat cues is imperative in order for a peace officer to respond quickly and appropriately in rapidly evolving, critical or highly critical scenarios. However, an officer cannot predict a non-compliant, resistive, aggressive, combative and/or violent subject's action with 100% accuracy based on the theory of consequentialism. Considering this, an officer is not expected to allow themselves to be subject to violent behavior prior to responding with some level of force to control the subject, based on the subject's apparent violent behavior in the moment force is used.

**Training re Force**. Peace officers are not expected to retreat in the face of a potential threat or physical attack, specifically in an environment where other individuals may be in danger. The consideration and protection of self and others is always a consideration based upon the actions of a suspect who is non-compliant, being perceived by an officer as an attack or a potential attack. Furthermore, peace officers are "not required to use the least intrusive degree of force possible," (*Graham v. Connor*) but may use only such force as is objectively reasonable under the circumstances. The question here is, what was the stimulus for the decision to use force? Police performance elements must be considered as referenced in this report, and the officer's orientation can only be derived from the statements and all corroborative evidence associated with the occurrence, to include video and audio recordings when available and transcribed recordings of both audio and video sources.

In every critical incident, there are issues related to officer performance limitations in action versus reaction scenarios.

A decision to use force is a serious decision for a peace officer. Such a decision should be guided by a reverence for the safety of the officers, the subject and other individuals present, and should be used only when other means of control are unreasonable, would be unsuccessful or have been exhausted. In this particular case, other force implementations would have been problematic as described by Officer Pettus, and, the force used was a low level of force, albeit quickly implemented.

## 8. METHODOLOGY SPECIFIC TO MY INVESTIGATIVE REVIEW AND ANALYSIS.

The methodology I use to examine police-related use of force through a full investigative analysis is explained below. The basic methodology I use has been applied in several dozens of cases that I have reviewed for matters before Federal Courts, State Courts, and administrative agencies.

**This section outlines the methodology applied to this review and analysis. My opinion on these issues is from a police performance dynamic/timing and context perspective, related to law enforcement use of force decision-making, with that focus. To the extent that Defendant designates a separate police practices expert, I do not expect to offer cumulative/duplicative testimony at trial**.

### A. General Methodology.

- **Case File: Developing an Understanding of the Facts**. Following a review of the information provided, I develop and state an understanding of the facts. The facts and circumstances are specific and unique for each case. Therefore, a document review is conducted, examining all documents for relevance, and to establish facts related to the issue/s cited.

- **Available Video Evidence Review**. A thorough technical analysis is done on any video evidence related to the case and used in the investigative analysis of the case. This process defines the integrity of the digital video file and allows for an analysis to be completed with a clear understanding of the content of the video file, i.e., resolution, frame rate, macro block analysis, file hash, etc. Subsequently, the file is examined and any pertinent

information relevant to the issue being examined is then isolated and used to analyze and compare to the officer's statements and other statements related to the incident.

- **Analysis of the Officer's Actions**. A full analysis regarding the actions of the involved law enforcement officer/officers is then conducted. This analysis is based on all relevant evidence, relevant testimony of witnesses, departmental and/or external investigations, physical evidence, and any other relevant information, to determine what the officers did and their stated justification for what they did.

- **Comparison with Nationally Accepted Police Training & Practices**. The third step involves comparing *what* the officer/s did and *why*, then applying the objective standard with various police departments' training and practice. Accepted training and practices include reference to relevant Supreme Court cases; departmental policies and procedures; applicable statewide police training programs/systems; model policies, training, and research from such institutions as the International Association of Chiefs of Police, Police Executive Research Forum, National Criminal Justice Reference Service, Commission on Accreditation for Law Enforcement Agencies, Public Agency Training Council, and the Northwestern University Center for Public Safety. Although there is no "standard" in police training, there are "accepted" training and practices that are consistent throughout the country.

- Supporting this methodology is research of the case documentation, review and comparison of all statements, recorded and transcribed, and existing research data. The methodology is based upon my specialized knowledge, education, training, and experience as a 24-year P.O.S.T. Certified Police Officer, holding an Advanced P.O.S.T. Certificate as a Police Training Sergeant, and performing investigative analysis on hundreds of officer-involved use-of-force incidents (currently NV POST Certified since 1997) I am the co-founder of the Association of Force Investigators (AFI-[forceinvestigators.com]) I am currently instructing, lecturing and consulting internationally in the field of use-of-force dynamics, as well as force investigations and analysis, "Enhanced Force Investigations"; Applying Science, Evidence Based Methods and the Cognitive Interview." Also significant is my continued research and review of police operations and use-of-force incidents as a court recognized subject matter expert in Use-of-Force Dynamics, Police Performance, Training and Forensic Video Examination, and continuing training and studies in the relevant subject matter.

- My opinions in a use-of-force case are carefully and objectively considered on a case-by-case basis. The consideration of many principles must be examined in police use of force incidents. These principles are outlined by the standards set forth in California P.O.S.T.,

department training, policy, and/or governing case law that is trained departmentally. It is for these reasons that all information and evidence must be carefully considered in every case to form objective opinions and conclusions. I have identified the following principles for consideration in this particular case:

- o Training of the involved peace officer/s.
- o Relative experience and tenure.
- o Pre-existing information regarding the incident.
- o Information learned on the scene as the officer and other peace officers arrived.
- o Information and actions unfolding in real time.
- o Overarching context in which the incident occurred.
- o Physical and forensic evidence available to support or refute statements regarding decisions and claims regarding the incident.
- o Efforts of the officers to use alternative methods of force prior to their use of force.
- o The apparent demeanor of the officer/s involved in the incident before, during and after the incident.
- o The time available for officers to assess and evaluate information during the incident.
- o Performance and interval constraints, and limitations the officers were faced with during the incident, i.e., time compression, distance, speed and motion.
- o Empirical data cited as a baseline in the consideration of time, distance, speed and motion related to the time compressed decision-making process.

### B. <u>Case-Specific Methodology.</u>

In addition to the above, for this particular case, I also employed the following case-specific methodology:

- **Video examination and case analysis**. The facts and resulting opinions and conclusions stated in this expert report are significant to police performance and force dynamic issues while facing an unpredictable threat from a violent subject who is continuing to be non-compliant, resistant and combative. Also, consideration is given to decision-making in a critical setting including the peace officer's mindset. The mindset of an officer is derived from multiple sources to include statements and interviews, surveillance video, and the stated perception of the involved subject's actions in a time compressed setting where the decisions being made by the officer implicate his safety and the safety of others. Here, in this incident, these decisions include the recognition of the threat confronting officers in real time as officers attempted to use lower levels of force to control and stop the aggressive

and combative actions of Allen. The focus of this report is on police performance and related force dynamics during the critical contact with Allen.

9.    **Digital Video Evidence Provided**

1.  **Video Analysis: Frame Analysis report.** A frame analysis report is generated to reflect data used for constructing a reasonably accurate time line to include encoding sequence (I-intra frames, P-predictive frames, and B-bidirectional prediction), frame location/position within the digital file, best effort time stamp and resolution (width/height). This digital video has only two (2) streams of data; visual and meta. Because there is no audible stream of data, timing is not exact. However, the visual sampling intervals are generally accurate to within approximately 400ms per frame of visual data. The frame analysis is labeled as [Allen frmanalysis.xml].

2.  **Video Analysis: Equipment and Software.** The above processes are generated through the Input-Ace platform version 2.1.5., a forensic video analysis software specifically purposed for forensic video examination and Adobe Premiere Pro 2020.

3.  **Technical Considerations – General.** During the examination of the video in this case, consideration was given to technical variables that can cause visual errors into the image/images. Technical variables can cause potential misinterpretation concerns to the untrained examination of compressed video images. Some of the concerns are as follows:

    a)  Frame rate, movement analysis concerns.
    b)  GOP Structure, Image encoding sequence.
    c)  Motion blur caused by speed of movement.
    d)  Camera angle v. involved officers' angle
    e)  Pixelization due to compression causing artificial edge patterns.

    Technical Considerations – Camera position and visual angle. In this case, the most relevant vehicle camera evidence is from the perspective of Officer Pettus and Officer Stout. The technical concerns listed do not cause issue with the video evidence in this particular case. Any questions posed in this incident are generally captured by the recording camera, with consideration given to the technical aspects mentioned herein. The following digital video evidence files were examined during the referenced analysis.

- **Video File 1:** CorneliusPettus_201909302232_350109_37170463.mp4

- **Video File 2:** phoneyanked,punched,thenmaced...2019-12-18_10-06-33.mp4

## 10. <u>Methodology Video analysis</u>

The underlying methodologies were utilized to ensure the integrity of the video evidence files provided.

### A. Video Analysis

The video evidence in this case was analyzed to ensure the integrity and validity of the information contained in the digital files. The encoded visual data, as well as file information contained in the meta-data of the digital evidence was examined utilizing the following processes: meta-data confirmation, frame analysis, and macro block analysis.

## 11. <u>DOCUMENTS & EVIDENCE REVIEWED/CONSIDERED (MATERIALS).</u>

The following is a summary list of the documents, reports, photographs, audio/video recordings, evidence, and/or other materials that I reviewed and/or considered in this case.

**Documents provided by Counsel**

**A comprehensive list will be provided upon request.**

*I am informed and believe that I have received all disclosures and discovery responses produced thus far in this case. The foregoing list underscores those records to which I devoted substantial consideration. The report reflects the best explanation from the information received within those records. In the event that any additional items were inadvertently omitted from the foregoing list, this expert will supplement this list upon questioning under oath and reserves the right to supplement this list in a supplemental report.*

### A. <u>Reference Materials Considered.</u>

- Anderson, J. R. (2005). Cognitive Psychology and Its Implications. Macmillan.
- Christa Redmann, B. L. (2009). New Developments in Understanding the Behavioral Science Factors in the "Stop Shooting" Response. Law Enforcement Executive Forum • 2009 • 9(4), 35-36.
- Dr. Bill Lewinski, P. (2000, December). why is the suspect shot in the back. Police Marksman, pp. 20-28.
- Fackler, E. J. (2008). OFFICER REACTION - RESPONSE TIMES IN FIRING A HANDGUN. JOURNAL OF THE INTERNATIONAL WOUND BALLISTICS ASSOCIATION, 6-9.
- Hope, L. B. (2015). Memory and the Operational Witness: Police officer recall of firearms encounters as a function of active response role. Law and Human Behavior.
- Jason, A. (2010). Shooting Dynamics: Elements of Time & Movement in Shooting Incidents. ISJ (investigative sciences journal), 6-8.
- JENNIFER L. DYSTERHEFT, W. J. (2013). The Influence of Start Position, Initial Step Type, and Usage of a Focal Point on Sprinting Performance. International Journal of Exercise Science 6(4) : 320-327, 2013.
- Kenneth A. Deffenbacher, 1. B. (n.d.). A Meta-Analytic Review of the Effects of High Stress on Eyewitness Memory.
- Lorraine Hope, U. o. (2016). Witnesses in action: The effect of physical exertion on recall and recognition . Psychological Science, 23(4) 386–390, DOI: 10.1177/0956797611431463.
- MICA R. ENDSLEY, 1. T. (n.d.). HUMAN FACTORS, 1995, 37(1), 32-64 Toward a Theory of Situation Awareness Dynamic Systems. © 1995, Human Factors and Ergonomics Society. All rights reserved.
- Nathan C. Meehan, C. S. (n.d.). Behavioral Indicators During a Police Interdiction. (V. 2. Rapid Reaction Technology Office 5611 Columbia Pike Falls Church, Ed.) Naval Research Laboratory.
- William J. Lewinski, D. A. (2016 14-17-May). Falling Subjects and the Use of Force. The Police Chief Magazine.
- William J. Lewinski, P. W. (Volume 2, Number 3, November 2010). FIRED CARTRIDGE CASE EJECTION PATTERNS FROM SEMI-AUTOMATIC FIREARMS . Investigative Sciences Journal.
- Urey W. Patrick, John C. Hall (2010). In Defense of Self and Others… Carolina Academic Press, LLC

12. **FEE SCHEDULE.**

See attached: incorporated by reference here.  For depositions and/or other trial or hearing/proceeding testimony, my hourly rate is $225.00 per hour, with a four-hour minimum

($900.00 minimum). Advance tender of deposition/testimony fees and any travel costs/fees for out-of-town travel is required.

**13.** **CURRICULUM VITAE (C.V.).**

See attached: incorporated by reference here.

**A.** **Summary of Qualifications.**

My name is James (Jamie) Borden. I have been a peace officer since 1997, and I am actively involved in the review and training of police practices and law enforcement policies. As of July 20, 2018, I have retired from the Henderson Police Department (HPD) where I was a Sergeant over the Use-of-Force Training and Analysis Unit, as well as a Sergeant over the HPD Training Section. I was instrumental in the development and operation of the Use-of-Force Training and Analysis Unit, and have established the Use-of-Force Training and Analysis Unit as a single point of contact for HPD in use-of-force and critical incidents involving HPD officers, for the purpose of investigation, review and analysis.

I was also one of two full-time Use-of-Force Instructors for HPD, and, as such, I was responsible for all in-service Use-of-Force training, and associated training, for police officers, corrections officers, and HPD's Citizens' Academy. In addition, I was the primary Use-of-Force Instructor for the Southern Desert Regional Police Academy (S.D.R.P.A.), a multi-jurisdictional academy in Clark County, which is a Nevada Police Officers Standards of Training (P.O.S.T.) certified entity.

I was involved in all management and oversight of Use-of-Force for HPD, including, but not limited to, identification of trends in use-of-force in HPD, statistical analysis of use-of-force through HPD's reporting and accountability software, and reporting to the Commission on Accreditation for Law Enforcement Agencies (C.A.L.E.A.) with respect to HPD use-of-force incidents.

My training, experience, lesson plan development, instruction and lecturing on the subject of use-of-force and seizure of persons is derived from case law from the Nevada Revised Statutes (NRS), the Ninth Circuit Court of Appeals and the United States Supreme Court regarding use-of-force, with perpetual study and review of all related case law decisions.

In 2012, I received the Force Science Analyst Certification from the Force Science Institute, which is the leading law enforcement research institute on studying the science of human dynamics behind use-of-force encounters. In 2013, I was chosen to pilot the Advanced Force Science Analyst course with the Force Science Institute and Dr. William Lewinski. In August of

2013, after a 400-hour focused study in human factors and human behavioral science, I received the first Advanced Force Science Analyst Certification Internationally.

In 2013, I joined the staff at the Force Science Institute as an instructor. I give lectures and instruction in the field of human performance, and the associated human factors, as they relate to police training and police procedure. Since 2013, I have been instructing and lecturing on scientific studies conducted by the Force Science Institute and other on human factors and human behaviors as those elements apply to Officers involved in critical use-of-force incidents. I am currently a Force Science staff instructor for the five-day Force Science Analyst Certification, the two-day focused course of instruction, the four-hour modified Introduction to Force Science classes. I also co-developed the "Realities of De-escalation" class. I have developed the 3-day Force Investigators course of instruction, including the forensic examination of video evidence; designed for the recreation of officer involved critical incidents. I have been directly involved in research projects conducted by the Force Science Institute as a test subject and as a consultant, including gathering empirical data for use in peer reviewed journal articles. I am also currently an assistant instructor in forensic video investigations in the U.S. and Canada.

From 2012 up to my retirement in 2018, I was responsible for the review, analysis and consultation of use-of-force reporting for members of HPD, including police officers and corrections officers, as the former Sergeant over the Use-of-Force Training and Analysis Unit, and the Training Section.

I have extensive experience with HPD in police patrol and as a training officer and instructor. I am also a certified Taser Instructor, Defensive Tactics instructor, Baton instructor, and a Firearms Instructor and Range Master in the capacity of Sergeant over the training facility for the Henderson Police Department.

I have been in the following specialized assignments for HPD: Field Training Officer, The Training Bureau, Narcotics Division, and, as Sergeant, and developer of the Use-of-Force Training and Analysis Unit. I have an in-depth background in analysis of human factors, human behavior, and human performance related to law enforcement including, but not limited to, investigating, reviewing and analyzing officer involved shootings and critical incidents through video analysis, as well as on-scene investigation. My training and background have given me first-hand knowledge, extensive application experience, and the objective basis to review peace officers' actions and the time compressed decisions involved in the use of non-deadly and deadly force.

Following a complete Use-of-Force Policy re-write, I was responsible for periodic reviews and updates of HPD's Use-of-Force Policy, as well as related policies connected to use-of-force and associated police procedures.

Since 2013, I have instructed and/or lectured on Use-of-Force and the associated human dynamics nationwide, including numerous Federal Agencies, the FBI Academy Associates (FBINAA), Law Enforcement Executive Development seminars (LEEDS) and multiple jurisdictions nationwide including state police, municipalities, sheriff's departments and attorneys.

I am currently a member of the HFES (Human Factors and Ergonomics Society) as a professional working in the capacity of founder of the Association of Force Investigators, Critical Incident Review and a former Senior Instructor for the Force Science Institute, lecturing on the application of the scientific study of human performance and decision making related to law enforcement. I have been accepted in court federally and at the state level as an expert in the application of scientific research regarding human behavior, as it relates to law enforcement training, Use-of-Force, general police performance and forensic video investigation and examination related to police use of force.

I have works published in the Las Vegas Police Protective Association's Magazine, "Vegas Beat," and have published an article titled "Policy Matters" in May 2016 with the Daigle Law Group (DLG) (see http://digital.911media.com/i/678564-may-june-2016).

There is a complete list of my publications, lectures and instruction on my Curriculum Vitae, as well as previous and current cases I am involved in as an expert or consultant.

 

**B.** **Summary of Area of Expertise.**

Law Enforcement Procedure, Law Enforcement Training & associated Human Performance and Force Dynamics relevant to law enforcement training and Police Use-of-force and decision-making, Video Analysis related to use of force and police related contacts.

**14.** **LIST OF PERTINENT EXPERT TESTIMONY.**

See attached: incorporated by reference here.

 

**15.** **RIGHT TO AMEND.**

I reserve the right to amend this report. It is my understanding that additional materials may be in the process of being produced or may be requested later. I reserve the right to submit a

supplemental report should any subsequent information or evidence be produced to me that may materially affect or alter any of my opinions in this case.


Sincerely,

James W. Borden