E. BRYAN WILSON
Acting United States Attorney

JAMES KLUGMAN
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: james.klugman@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>CORNELIUS AARON PETTUS, Jr.<br><br>    Defendant. | No. 3:20-cr-00100-SLG-MMS |

**RESPONSE IN OPPOSITION TO "MOTION IN LIMINE REGARDING NOTICE OF INTENT TO INTRODUCE PRIOR BAD ACTS EVIDENCE"**

    Cornelius Pettus is charged with deprivation of civil rights under color of law, based on his unlawful and willful assault on a citizen while working as an officer with the Anchorage Police Department in September 2019. This incident was the third time in 18 months that APD investigated Pettus's use of force against members of the public and concluded that his conduct was excessive.

    Pettus asks that the government be precluded from informing the jury that Pettus

had previously been notified of and disciplined for excessive use of force. Because this evidence is highly probative of an essential element of the charged offense—an element that appears to be at the heart of the central dispute in this case—the evidence is admissible, and the motion in limine should be denied.

**FACTS**

On September 30, 2019, Cornelius Pettus was working as a patrol officer with the Anchorage Police Department. That evening, while working an unrelated investigation in Fairview, Pettus and other officers encountered S.A. Pettus recognized S.A. from his YouTube channel, where S.A. would post videos of himself verbally criticizing police officers and other government personnel. After exchanging heated words with Pettus, S.A. left the area on his bicycle.

Pettus nevertheless decided to issue citations to S.A. for failing to ride his bicycle sufficiently closely to the right side of the road, and for failing to have reflectors and an audible signaling device equipped. (Pettus had never issued citations for these violations before.) Pettus queried S.A.'s information in the Alaska Public Safety Information Network, traveled to his apartment with another officer, and attempted to serve him the citations while he was inside. As Pettus began walking back to his patrol car, S.A. followed him out, wearing only a pair of shorts. S.A. cursed at Pettus and accused him of "playing games" while filming the interaction on his cell phone. Pettus snatched the phone from S.A., announcing that "it's mine now." When S.A. asked, "So, going to just grab my phone, huh?", Pettus responded "So, it's evidence. Thanks. See ya." He then shoved S.A. in the

chest and turned to walk back to his car.

S.A. followed Pettus, who turned around and asked, "What's up?" He then punched S.A. in the jaw. Pettus advanced on S.A. and kicked him in the groin, knocking him back. Pettus stood over S.A., asked him if he "want[ed] more", and deployed his OC spray on him. S.A. was arrested for assaulting Pettus and spent approximately a week and a half in pretrial detention before the municipal prosecutor moved to dismiss the case.

This episode was not the first time that Pettus used excessive force against a member of the public. On March 20, 2018, Pettus and other police officers encountered an intoxicated woman who had been involved in an altercation with employees at a supermarket. In the course of attempting to place the woman into his police car, the defendant directed two kicks to her, and then closed the door. In a report written to document the incident, the defendant claimed to have only used "hard hand control" and "put [his] hand into [the woman's] thigh]"; he did not acknowledge kicking her. The Anchorage Police Department found the defendant's use of force to be excessive and in violation of policy.

On August 21, 2019, Pettus was dispatched to investigate a suspicious person who may have damaged vehicles. The defendant located a potential suspect, chased him onto a bike trail, fired his taser at him (missing the suspect), "commandeered" a bicycle from a bystander, tackled the suspect, and kneed him in the side while he was on the ground. A memorandum was issued to Pettus on August 28, 2019, informing him that APD had opened an investigation into his use of force. The use of force was ultimately found to be

unjustified and outside of policy.

ARGUMENT

**1. This evidence is both relevant, highly probative, and admissible**

Evidence of a person's bad acts is generally inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). It is, however, "admissible for another purpose, such as proving … intent,… knowledge, [or] absence of mistake". Fed. R. Evid. 404(b)(2). The evidence of these two prior instances of excessive force is admissible for precisely these purposes. In order to be admissible,

> the evidence must satisfy the following four requirements:
>
> (1) it must prove a material element of the offense for which the defendant is now charged;
>
> (2) in certain cases, the prior conduct must be similar to the charged conduct;
>
> (3) proof of the prior conduct must be based upon sufficient evidence; and
>
> (4) the prior conduct must not be too remote in time.

*United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993). The evidence at issue satisfies all four of these requirements.

**1.1. The evidence is relevant to a material element, which will likely be the central disputed issue at trial**

It appears that Pettus concedes that he intentionally used physical force against S.A., and that he intends to claim that his conduct was justified. See ECF No. 27 at 7. But even if the jury determines that Pettus's actions were objectively excessive, that is not in itself

enough for the government to prove its case. Section 242 is a specific intent offense: in order to establish the defendant's guilt, the government must prove that he acted willfully: that is that his conduct was "'in open defiance or reckless disregard of a constitutional requirement that has been made specific and definite.'" *United States v. Reese*, 2 F.3d 870, 881 (9th Cir. 1993) (quoting *Screws v. United States*, 325 U.S. 91, 105 (1945)). That means that Pettus cannot, and should not, be convicted if he entertained an honest but unreasonable and mistaken subjective belief that his actions were legally justified.

In this case, the fact that Pettus had previously used excessive force, been placed on notice that his conduct may have been improper and was under investigation, and (with respect to the 2018 incident) received discipline and remedial training, speaks directly to his state of mind on September 30, 2019. Pettus's engaging in this conduct and having seen APD's response makes it significantly more likely that the knew the constitutional significance of his conduct, intended to violate S.A.'s rights, and was not mistaken about the legality or justification of his actions.[1]

While Pettus is correct that neither prior incident resulted in prosecution or conviction, that does not render the events irrelevant. While there may have been a reasonable doubt in the earlier incidents—or any number of other reasons why no prosecution was initiated—Pettus's actions and APD's response still speaks powerfully to his state of mind here. And courts around the country have recognized as much, repeatedly

---

[1] Pettus suggests that lack of mistake is not implicated because he concedes that he intentionally used force against S.A. ECF No. 27 at 7. But the evidence is not sought to rebut the suggestion that Pettus accidentally injured S.A., but rather to rebut the suggestion that he genuinely but mistakenly believed his conduct was lawful.

U.S. v. Pettus
3:20-cr-00100-SLG-MMS

Page 5 of 9
Case 3:20-cr-00100-SLG-MMS   Document 32-2   Filed 08/31/21   Page 5 of 9

upholding the admission of evidence of similar misconduct in § 242 prosecutions to establish a defendant's willfulness and intent to do wrong. See, e.g., *United States v. Cowden*, 882 F.3d 464, 472-473 (4th Cir. 2018); *United States v. Boone*, 828 F.3d 705, 711 (8th Cir. 2016); *United States v. Rodella*, 804 F.3d 1317, 1334 (10th Cir. 2015); *United States v. Brugman*, 364 F.3d 613, 620-621 (5th Cir. 2004); *United States v. Mohr*, 318 F.3d 613, 622 (4th Cir. 2003); *United States v. Dise*, 763 F.2d 586, 592-593 (3d Cir. 1985). The evidence is equally relevant here, and the jury should be afforded the opportunity to consider it when reaching its verdict.

### 1.2. The prior incidents are similar to the crime charged

The government seeks to use this evidence to show knowledge, intent, and lack of mistake. No factual similarity is required when evidence is used to establish knowledge, "as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1326 (9th Cir. 1992). Here, the incidents show that Pettus was on notice of what conduct APD potentially (and, in the case of the 2018 incident, actually) deemed to be inappropriate use of force. This makes it more probable that he actually knew that his use of force in this case was in fact excessive.

On the other hand, similarity is required if the evidence is used to show intent, *United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir. 1985), or lack of mistake, *United States v. Bailleaux*, 685 F.2d 1105 at n.1 (9th Cir. 1982). The evidence here meets that test. As with the charged offense, in both instances Pettus was on duty as a patrol officer. He

confronted members of the public engaged is disruptive and potentially illegal behavior. Those subjects treated him disrespectfully and failed to respond to his instructions. And Pettus responded by using excessive force against them. In all three incidents, Pettus wrote a police report in which he attempted to provide post hoc justifications for his conduct. In the 2018 incident—as here—Pettus did so by providing an untruthful version of event, which was refuted by the digital evidence. The similarity thus is highly probative as to his intent.

### 1.3. There is sufficient evidence to establish that the prior incidents happened

The government "need not prove Rule 404(b) evidence by a preponderance of the evidence; rather, '"such evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act."' *United States v. Bailey*, 696 F.3d 794, 799 (quoting *Huddleston v. United States*, 485 U.S. 681, 685 (1988)).

There does not appear to be any dispute that the two prior incidents actually happened. The 2018 incident is largely audio and video recorded, both were witnessed by multiple police officers, and in both cases Pettus wrote a report documenting his version of events. While the defense can certainly dispute the details of the events or their significance, there is more than enough here to clear the "low threshold test" required. *United States v. Dhingra*, 371 F.3d 557, 566 (9th Cir. 2004).

### 1.4. The prior conduct must not be too remote in time

The 2018 incident happened approximately 18 months before the charged offense, and the 2019 incident happened less than 6 weeks before. This is not so remote as to counsel

U.S. v. Pettus
3:20-cr-00100-SLG-MMS

Page 7 of 9
Case 3:20-cr-00100-SLG-MMS   Document 32-2   Filed 08/31/21   Page 7 of 9

against admission. See *United States v. Houser*, 929 F.2d 1369, 1373 (9th Cir. 1990) (offense committed four years before charged crime "is not a remote conviction"), different aspect of holding abrogated by *Buford v. United States*, 532 U.S. 59, 64 (2001).

**2. This evidence is not unduly prejudicial**

Fed. R. Evid. 404(b)(2) "is a rule of inclusion—not exclusion" and if the evidence serves a permissible purpose, it should be admitted, unless precluded by Fed. R. Evid. 403. *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007). Pettus's primary argument on this point is that the evidence would waste time. He is certainly correct that presenting the evidence will take more time than not presenting it. But, as noted above, the core facts of each of the incidents is do not appear to be seriously contested. In both incidents, the government will present the testimony of a few witnesses are present, the documentation that Pettus received from APD about their investigation, Pettus's own report offering his version of events, and in the case of the 2018 incident, the video recording. In light of the highly probative nature of this evidence, the time commitment cannot properly be deemed the kind of "waste" that would support exclusion.

Pettus also suggests that admission would risk confusing the issues or prejudicing him. But the government will propose instructing the jury, in the most express terms possible, that Pettus is on trial for the September 30 incident only, that evidence of the other acts is admitted for specific purposes and cannot be considered in any other way, and that Pettus cannot be found guilty unless the government has proven each of the elements of the indicted charge beyond a reasonable doubt. Jurors are presumed to follow these sorts

of limiting instructions. *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995). Moreover, the prior incidents, while excessive, are not especially inflammatory, and are less egregious than the conduct charged in this case. In light of the nature of the evidence, considered in combination with appropriate limiting instructions, the limited potential for prejudice or confusion does not "substantially outweigh[]" the significant probative value. Fed. R. Evid. 403. As such, there is no obstacle to admission.

**CONCLUSION**

The evidence at issue is relevant and probative on the question of the Pettus's willfulness, perhaps the central issue in this trial. The dangers of waste of time, confusion, or unfair prejudice are small. The request to exclude the evidence should be denied.

RESPECTFULLY SUBMITTED August 31, 2021 at Anchorage, Alaska.

E. BRYAN WILSON
Acting United States Attorney

/s James Klugman
JAMES KLUGMAN
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2021
a true and correct copy of the foregoing
was served electronically on:

Clinton M. Campion

/s James Klugman
Office of the U.S. Attorney

U.S. v. Pettus
3:20-cr-00100-SLG-MMS