E. BRYAN WILSON
Acting United States Attorney

JAMES KLUGMAN
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: james.klugman@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>CORNELIUS AARON PETTUS, Jr.,<br><br>　　　　Defendant. | No. 3:20-cr-00100-SLG-MMS |

### RESPONSE IN OPPOSITION TO
### "MOTION TO DISMISS FOR VINDICTIVE PROSECUTION"

　　Cornelius Pettus was indicted for a violation of civil rights, based on his use of excessive force against S.A. while working as an officer for the Anchorage Police Department. Another grand jury later returned a superseding indictment charging Pettus with falsifying records relevant to a federal investigation, based on false exculpatory statements Pettus inserted into his police report documenting the encounter. Pettus now argues that this latter count should be dismissed because it is the product of prosecutorial

vindictiveness. Because Pettus has failed to meet his burden to demonstrate vindictiveness on the facts of this case, or even an appearance thereof, his motion should be denied.

**FACTS AND PROCEDURAL HISTORY**

On September 30, 2019, Pettus was working for the Anchorage Police Department as a patrol officer. S.A. was a citizen of Anchorage who regularly filmed and streamed to social media his interactions with and criticisms of police officers and other government officials. Many APD officers, including Pettus, were familiar with these videos.

During his shift on the evening of September 30, Pettus and other officers encountered S.A. while dealing with an unrelated incident in the Fairview neighborhood of Anchorage. S.A. left the area on his bicycle, which was not equipped with an audible warning device or a forward-facing white lamp, as required by the Anchorage Municipal Code.

Pettus decided to retaliate against S.A. by issuing him citations for these equipment violations, and for failing to ride his bicycle nearest to the right edge of the street. These ordinances are rarely enforced by APD officers, and indeed Pettus had never before issued citations for violating them.

Pettus used the Alaska Public Safety Information Network to identify S.A.'s address and travelled there with a second officer. Pettus went to S.A.'s door and gave him copies of the citations, which S.A. refused to accept. Pettus then returned to his patrol car.

S.A., wearing only a pair of shorts, went outside and angrily criticized Pettus for his conduct, while attempting to record the interaction using his cell phone. Pettus grabbed the

U.S. v. Pettus
3:20-cr-00100-SLG-MMS
Page 2 of 9
Case 3:20-cr-00100-SLG-MMS   Document 43   Filed 10/01/21   Page 2 of 9

phone out of S.A.'s hands, claiming that it was "evidence". S.A. then stepped closer to Pettus, who forcefully pushed him away. Pettus then turned and walked to the driver's side of his police vehicle. S.A. followed Pettus, asking for his phone back.

Pettus turned to face S.A. and asked, "what's up?" Although S.A. was unarmed and not presenting a threat, Pettus then punched him in the face, knocking him backwards, and followed up with a kick. Pettus continued closing on S.A., asked him, "You want some more?", and repeatedly used his OC spray on him.

Additional officers responded to the scene, including Pettus's supervisor. Pettus acknowledged using force against S.A., falsely explaining that he had done so because S.A. had placed him in fear of imminent physical injury. S.A. was arrested for assaulting a police officer, and spent approximately a week in jail before the municipal prosecutor declined to pursue the case.

APD requires officers in such a situation to write police reports accurately documenting events. Realizing that his use of force was illegal, and wanting to shield himself from the consequences of his actions, Pettus drafted and submitted a police report that falsely claimed that S.A. had "challenged [him] to a fight by balling his fists and assuming a fighting stance". After submitting his report and completing his shift, Pettus contacted his supervisor and asked for permission to revise his report. Pettus then added additional details designed to bolster his false claim that his use of force was justified.

After reviewing the case, APD initiated a criminal investigation into Pettus's actions, and the Alaska attorney general ultimately filed state criminal charges. The

incident was also referred to the FBI, which began its own investigation into the possible commission of federal offenses. To facilitate this investigation, the grand jury compelled the testimony of a number of witnesses and issued subpoenas for voluminous records. Although the process was slowed by the shutdowns caused by the COVID-19 pandemic, the first indictment in this case was returned in October 2020, charging Pettus with violating 18 U.S.C. § 242 by using excessive force against and injuring S.A.. ECF No. 2. As the district prepared to resume court proceedings the following spring, the government and Pettus discussed the possibility of resolving the case through a negotiated plea agreement. The government advised Pettus that it would likely ask a grand jury to consider charges related to Pettus's false statements in his police reports prior to trial. Pettus ultimately informed the government that he was not willing to admit guilt to any criminal charges, and a grand jury subsequently returned the first superseding indictment, which added a second charge of violating 18 U.S.C. § 1519.

**ARGUMENT**

Vindictive prosecution is a due process doctrine that precludes the government from increasing the severity of charges to retaliate against the defendant's exercise of a constitutional right. This arises most frequently when a defendant successfully appeals a conviction, and the charges are increased prior to the second trial. See, e.g., *Blackledge v. Perry*, 417 U.S. 21 (1974). Obviously, that is not the posture of this case.

On the other hand, a claim of vindictive prosecution when the charges are amended *before* trial is rarely viable. Typically, when "the prosecutor has probable cause to believe

that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).[*] This discretion is "the special province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to 'take Care that the Laws be faithfully executed.'" *Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (citing U.S. Const., Art. II, § 3.). Because United States Attorneys and their assistants "are designated by statute as the President's delegates to help him discharge his constitutional responsibility … '[t]he presumption of regularity supports' their prosecutorial decisions and, 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Chemical Foundation, Inc.*, 262 U.S. 1, 14-15 (1926)).

There are two ways a defendant can establish a vindictive prosecution claim. The first is to directly prove that the prosecutor actually made the charging decision for vindictive reasons. The second is to show that circumstances create a presumption of vindictiveness, at which time the burden shifts to the government to justify the charging decision. See *United States v. Jenkins*, 504 F.3d 699-700 (9th Cir. 2007).

This record contains no support for a claim of actual vindictiveness, and it does not appear that Pettus intends to rely on an actual vindictiveness theory. ECF No. 42 at 5 (admitting absence of "direct evidence of vindictiveness" and referencing "appearance"

---

[*] Pettus does not appear to dispute that the government does have probable cause to think that he is guilty of the charged offense.

and "presumption of vindictiveness").

The facts of this case also do not reflect a presumption of vindictiveness. Pettus's claim is based on the argument that the government 1. presented him with a plea agreement; 2. told him that it would seek a superseding indictment adding an additional charge if he did not enter into the plea agreement; 3. actually did so after he rejected the plea agreement; even though 4. the government could have included this charge in the original indictment. This is *exactly* the situation that the Supreme Court addressed in *Bordenkircher*:

> The respondent, Paul Lewis Hayes, was indicted by a Fayette County, Ky., grand jury on a charge of uttering a forged instrument in the amount of $88.30, an offense then punishable by a term of 2 to 10 years in prison. After arraignment, Hayes, his retained counsel, and the Commonwealth's Attorney met in the presence of the Clerk of the Court to discuss a possible plea agreement. During these conferences the prosecutor offered to recommend a sentence of five years in prison if Hayes would plead guilty to the indictment. He also said that if Hayes did not plead guilty and "save[d] the court the inconvenience and necessity of a trial," he would return to the grand jury to seek an indictment under the Kentucky Habitual Criminal Act, which would subject Hayes to a mandatory sentence of life imprisonment by reason of his two prior felony convictions. Hayes chose not to plead guilty, and the prosecutor did obtain an indictment charging him under the Habitual Criminal Act. It is not disputed that the recidivist charge was fully justified by the evidence, that the prosecutor was in possession of this evidence at the time of the original indictment, and that Hayes' refusal to plead guilty to the original charge was what led to his indictment under the habitual criminal statute.

434 U.S. at 358 (internal citations omitted). And the Court expressly rejected the position that Pettus is urging in his motion. *Id*. at 365 ("We hold … that the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause"). Pettus does

not even mention *Bordenkircher* in his motion, much less articulate why it does not foreclose his claim. Nor does he distinguish the array of Ninth Circuit cases applying *Bordenkircher* to reject substantively identical arguments. See, e.g., *United States v. Noushfar*, 78 F.3d 1442, 1446 (9th Cir. 1996); *United States v. North*, 746 F.2d 627, 632 (9th Cir. 1984); *United States v. Allsup*, 573 F.2d 1141, 1143 (9th Cir. 1978). In the absence of such an explanation, his claim must be rejected.

By contrast, the only case Pettus cites in support of his position is inapposite. In *United States v. Jenkins*, the defendant testified at her own trial. While the jury was deliberating, the government charged the defendant with additional crimes that she had disclosed during her testimony. The Ninth Circuit held that his situation created a presumption that the government was punishing the defendant for exercising a right—not her right to reject a plea agreement as in Pettus's case (after all, that would have been foreclosed by *Bordenkircher*) nor her right to go to trial, but rather her "exercise of her right to testify" in her own defense. 504 F.3d at 701; see also *id*. at 699 ("The court explained that its ruling was a 'prophylactic' measure intended to prevent the chilling of a defendant's ability to take the witness stand."). Indeed, the court expressly conceded that the government "could have filed the alien smuggling charges in January [i.e. prior to the beginning of trial]" without creating a presumption of vindictiveness. *Id*. at 702. Because Pettus's trial has not started and he has not testified, his claim is governed by *Bordenkircher*, not *Jenkins*.

Although the argument section of Pettus's motion refers exclusively to his decision

not to enter into a plea agreement, he also mentions that he provided the government with an expert report that purported to exculpate him. To the extent that Pettus is suggesting that filing this notice prior to the superseding indictment also also raises a presumption of vindictiveness, that claim should also be rejected. As Pettus concedes, the government informed him of its intent to seek a superseding indictment before he provided his report. See ECF No. 42 at 2. This refutes the suggestion that the report could have been the cause of the putatively "vindictive" action. See *United States v. Gamez-Orduno*, 235 F.3d 453, 463 (9th Cir. 2000).

Finally, Pettus complains that he "has not received the presumption that he discharged his duties properly" and suggests that as a result, the court should hold him to a lower burden when evaluating his vindictive prosecution claim. ECF No. 42 at 6. This argument is unsupported by any citation to legal authority. It is also factually untrue: Pettus's fellow police officers *did* presume that he was telling them the truth about what had happened, and that he had conducted himself in an appropriate and lawful manner, which is why they assisted Pettus by arresting S.A. for assaulting him. A state judicial officer likewise granted Pettus's account a presumption of validity by accepting a criminal complaint against S.A. that relied on it. It was only *after* a careful investigation showed that Pettus's statements were false and that he had acted illegally that he was subjected to potential criminal liability. To allow Pettus rely on his holding public trust to shield himself from the consequences of abusing it would violate every standard of equity, justice, and basic common sense.

**CONCLUSION**

The Supreme Court and the Ninth Circuit have repeatedly and consistently rejected Pettus's position for over 40 years. Pettus offers no explanation of why or how his claim should fare any better today. Accordingly, his motion should be denied.

RESPECTFULLY SUBMITTED October 1, 2021 at Anchorage, Alaska.

E. BRYAN WILSON
Acting United States Attorney

/s James Klugman
JAMES KLUGMAN
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2021
a true and correct copy of the foregoing
was served electronically on:

Clinton M. Campion

/s James Klugman
Office of the U.S. Attorney

U.S. v. Pettus
3:20-cr-00100-SLG-MMS