S. LANE TUCKER
United States Attorney

CHARISSE ARCE
ALLISON M. O'LEARY
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: charisse.arce@usdoj.gov
allison.oleary@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CORNELIUS AARON PETTUS, Jr.,<br><br>Defendant. | No. 3:20-cr-00100-SLG-MMS |

**GOVERNMENT'S MOTION *IN LIMINE* TO LIMIT
IMPROPER TESTIMONY OF JAMES W. BORDEN[1]**

Defendant Cornelius Aaron Pettus is indicted for a violation of civil rights based on his use of excessive force while working as a police officer and falsification of records during a federal investigation of his use of excessive force. He filed notice of an expert

---

[1] Danika Elizabeth Watson (Paskvan), J.D. Candidate, May 2022, Fordham School of Law, contributed to the preparation of this motion and the legal research contained herein.

witness, James "Jamie" Borden, and provided Mr. Borden's expert report. (Dkt. 28.) The government objects to eight categories of testimony reflected in his expert report which violate evidentiary rules. These include: (1) testimony regarding Pettus's mental state, which is barred by Federal Rule of Evidence ("Rule") 704(b); (2) testimony regarding the extent and nature of S.A.'s injuries and medical conditions, which is beyond Mr. Borden's expertise; (3) testimony which purports to analyze or expound upon issues of law, which is consistently barred in the Ninth Circuit; (4) testimony which purports to resolve disputed facts, which is unhelpful to the jury and consistently barred in the Ninth Circuit; (5) testimony expressing ultimate conclusions on the reasonableness of Pettus' use of force, which would merely tell the jury what result to reach and what facts to find in contradiction of Rules 403 and 702; (6) testimony regarding forensic video analysis and any opinion in relation to the digital evidence in this case; (7) opinions or testimony regarding "human performance factors"; and (8) opinions or conclusions whether Pettus' actions were within Anchorage Police Department ("APD") policy.

Therefore, the government respectfully requests an *in limine* ruling limiting Mr. Borden's testimony to exclude the aforementioned improper categories.

## I. BACKGROUND

### A. Facts and Procedural History

On September 30, 2019, the defendant was on patrol as a police officer for the Anchorage Police Department ("APD"). That day, S.A., a "First Amendment auditor" who posts videos of himself insulting APD officers to his YouTube account, rode past the defendant on his (S.A.'s) bicycle while taking a cellphone video and cursing at the

2

defendant. The defendant and a second officer tracked down victim S.A. at S.A.'s apartment to serve S.A. three citations based on this interaction for riding a bicycle without an audible warning device or forward-facing white lamp, as required by the Anchorage Municipal Code. The defendant had never before issued such citations, and they were for violations of ordinances rarely enforced by APD officers.

When the defendant arrived at S.A.'s apartment, the defendant gave S.A. copies of the citations, which S.A. refused. As Pettus returned to his patrol car, S.A., wearing only a pair of shorts, went outside and attempted to record the interaction using his cell phone. The defendant grabbed S.A.'s cell phone out of S.A.'s hands as the two stood in front of the defendant's police car, claiming it as "evidence." S.A. stepped closer to Pettus, who forcefully pushed him away. The defendant then walked around the front of his police car to the driver's door area, and S.A. followed. Pettus turned to face S.A. and said, "What's up?" Then he punched S.A. in the face and kicked at him. S.A. backed away from the defendant, who pursued S.A., asking "You want some more?" The defendant sprayed OC spray, colloquially known as pepper spray, at S.A. as he walked back to his apartment's door. Pettus gave no commands to S.A. while he was spraying him. Pettus then arrested S.A. for assaulting a police officer, disorderly conduct based on a challenge to fight, and resisting arrest.

Medical professionals evaluated S.A.'s condition at the scene. S.A. reported jaw pain from the punch, a scraped knee from when Pettus "sprayed [him] with OC and took [him] down," pain to his face, and irritation from OC spray. S.A. spent approximately a week in jail before the municipal prosecutor dismissed the case.

3

After the incident, Pettus wrote a police report claiming that S.A. had "challenged him to a fight" by taking a "fighting stance," which required him to use force to protect himself from imminent harm. After submitting the report, Pettus called his sergeant to ask to let him change it. The sergeant retained a copy of the original, and allowed Pettus to change the report. Pettus added in additional details bolstering his claim that S.A.'s behavior was aggressive and threatening. In a criminal interview with APD detectives, Pettus acknowledged that S.A.'s stance did not actually appear to reflect what Pettus wrote in the initial report or in his revised version. It also appears Pettus did not realize that the incident was captured on his in-car video.

On September 21, 2021, a grand jury indicted Pettus on two counts: Count One, deprivation of civil rights under color of law, in violation of 18 U.S.C § 242; and Count Two, falsification of records during a government investigation, in violation of 18 U.S.C § 1519.

### B. Expert Report and Proffered Testimony

On August 17, 2021, Pettus submitted a notice of an expert witness report from James "Jamie" Borden. (Dkt. 28.) The report contains Mr. Borden's curriculum vitae ("CV") as an expert of police-use-of-force, police training and related police performance; police procedure; police practice and policy; and forensic video review and analysis. It also includes a "case review and expert report" dated August 8, 2021, and captioned to appear in the case *State of Alaska v. Pettus*, 3AN-10-10036CR. (*Id.* at 19.)

Mr. Borden's report concerns only Count One of the indictment, specifically analyzing Pettus' use of force in his encounter with S.A. and the integrity of the video

4

footage recording the encounter. Mr. Borden does not provide a complete list of documents and evidence reviewed in making his report, but indicates he reviewed Pettus' reports, the second officer's statements, video footage, and a variety of reference materials including several seemingly unrelated references on officer incidents involving firearms. Mr. Borden's report includes various assessments of Pettus' state of mind and intentions in his interactions with S.A., extended legal analysis and conclusions, commentary characterizing the extent and severity of S.A.'s injuries as "objective fact," and dozens of improper and unexplained conclusions on key factual questions presented as "opinions" or even bare "facts."

**II.     ARGUMENT**

The Court should limit Mr. Borden's proposed expert testimony to exclude eight impermissible areas included in his expert report: (1) opinions on Pettus' mental state or intentions; (2) statements regarding S.A.'s injuries or medical condition; (3) testimony offering conclusions or analysis of issues of law; (4) testimony resolving disputed facts, offered without clarifying that his opinion is based on factual assumptions that comport only with Pettus' version of events; (5) factual conclusions purporting to resolve whether Pettus' use of force was reasonable; (6) testimony or opinions on forensic video analysis; (7) testimony or opinions on "human performance factors; and (8) opinions or conclusions whether Pettus' actions were within APD policy.

### A. Legal Standards Governing Admissibility of Expert Testimony

Federal Rule of Evidence ("Rule") 702 governs the admissibility of expert testimony and provides that an expert may offer opinion testimony if

5

> (a) the proposed scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact at issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the witness has applied the principles and methods reliably to the facts of the case.

*See* FED R. EVID. 702.

Rule 702 assigns to the district court the role of gatekeeper and charges the court with assuring that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *See United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002) (finding district court erroneously admitted expert testimony where record did not establish reliable basis for expert's opinions) (citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597(1993)). The Supreme Court extended this gatekeeping function to include testimony based on "technical and other specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (internal quotations omitted) (citing FED. R. EVID. 702). The primary objective of the gatekeeping function is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

Expert testimony may not merely tell the jury what conclusions to reach, nor assert legal or conclusions that are properly the role of the jury. *See United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) ("Consistent with [Federal] Rule [of Evidence] 704, [the Ninth Circuit] has repeatedly affirmed that "an expert witness cannot give an opinion as to [his or] her *legal conclusion*, i.e., an opinion on an ultimate issue of law."); FED. R. EVID. 702, advisory committee notes to 1972 proposed rules ("[I]t seems wise to recognize that

opinions are not indispensable and to encourage the use of expert testimony in non-opinion form when counsel believes the trier can itself draw the requisite inference."); FED. R. EVID. 403 (permitting exclusion of relevant evidence whose probative value substantially outweighed by danger of "wasting time," among others). Although Rule 704 abrogates the old common law doctrine that proscribed testimony going to an "ultimate issue," it "does not lower the bar[] so as to admit all opinions." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017); FED. R. EVID. 704 advisory committee's note to 1972 proposed rules. District courts may exclude evidence that "undertakes to tell the jury what result to reach, [as] this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *Diaz*, 876 F.3d at 1197; *see McGough v. Penzone*, 2021 WL 1575054 at *3 (DAZ April 22, 2021) (citing *Daubert v. Merrell*, 509 U.S. 579, 591 (1993)).

In the Ninth Circuit, admissibility of expert opinion testimony generally turns on the trial judge's determinations on the following preliminary question of law under Rules 104(a) and 702:

- Whether the opinion is based on scientific, technical, or other specialized knowledge;
- Whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue;
- Whether the expert has appropriate qualifications-i.e., some special knowledge, skill, experience, training or education on that subject matter;
- Whether the testimony is relevant and reliable;
- Whether the methodology or technique the expert uses "fits" the conclusions (the expert's credibility is for the jury); and
- Whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time.

*See United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (internal citations

omitted); FED. R. EVID. 104(a); Fed. R. Evid. 702.

Moreover, "the proponent of the expert . . . has the burden of proving admissibility." *Lust v. Merrell Dow Pharms., Inc*., 89 F.3d 594, 598 (9th Cir.1996)); *see also Daubert v. Merrell Dow Pharms., Inc*., 43 F.3d 1311, 1316 (9th Cir.1995) ("[T]he party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology.").

### B. This Court should limit Mr. Borden's proffered expert testimony and expert report to exclude inadmissible testimony.

Mr. Borden's expert opinions reflected in his report and proposed testimony is riddled with factual and legal conclusions that are out of the scope of his expertise and thus improper to present to the jury. As such, much of Mr. Borden's proposed expert testimony is inadmissible because it is does not aid the jury. Indeed, the prejudicial nature of Mr. Borden's proposed opinions is compounded by the defense offering it through the guise of an expert.

#### i. Rule 704(b) bars Mr. Borden from offering his opinion on Pettus' mental state or intentions.

This Court should bar Mr. Borden's opinions related to Pettus' mental state, attitudes, intentions, or plans in his encounter with S.A. Rule 704 provides a bright-line rule that in a criminal case, "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." FED. R. EVID. 704. Here, the jury will have to determine whether Pettus "willfully" violated S.A.'s constitutional rights based on the evidence of Pettus's mental state and intentions as he

8

approached, punched, kicked, and OC-sprayed S.A. Thus, any expert opinion purporting to speak to Pettus' mental state and intentions during the encounter with S.A. are inadmissible and must be excluded.

Mr. Borden's report improperly presents many of his opinions on Pettus' mental state and intentions as "facts." Any such statement must be excluded. A representative sample from the report includes:

- "Officer Pettus had a lawful goal and objective in issuing citations to [S.A.] for the citable offenses he witnessed prior to delivering the citations to [S.A.]'s residence."

- "Since Officer Pettus was familiar with [S.A.]'s antagonistic history with law enforcement, and considering the fact [S.A.]'s identify [sic] was known, the decision was made to *not engage* [S.A.] in the field." (emphasis in original).

- "Officer Pettus believed serving the citations later would reduce the potential for confrontation."

- "Additionally, Officer Pettus attempted to walk away after the first aggressive contact with [S.A.] occurred near the front of his patrol vehicle."

- "Officer Pettus was not inclined to charge [S.A.] with any other crimes during the contact."

- "Because [S.A.] was in his home, although resistant to Officer Pettus' attempts to deliver the citations, Officer Pettus made a conscious decision to walk away from the encounter with no further confrontation."

- "The contact [with S.A.] was specifically related to the lawful goals and objectives identified by Officer Pettus in his report which was completed on the night of the contact."

- "Officer Pettus engaged physically with [S.A.] only in response to his ([S.A.]'s) behaviors and actions during the contact, and not through malevolent intentions."

- "The account given by Officer Pettus regarding the interaction is from his perspective with reasoning based on his stated thoughts and perceptions at the time."

- "[S.A.] was resistant/non-compliant and [S.A.] continued to make decisions that forced Officer Pettus to respond in kind. Officer Pettus could not have known the reasons for the non-compliance and unpredictable behavior, *only* that the behavior was occurring." (emphasis in original).

Mr. Borden's expert report also includes a surfeit of Rule 704(b)-barred statements on Pettus' state of mind and intention under the guise of "opinion" or "analysis," including the following:

- "It is my opinion that Officer Pettus had a plan to minimize the potential of a confrontation with [S.A.] . . . It is my opinion that the ability to maintain a non-escalated contact was ultimately incumbent on the actions of [S.A.]."

- "Officer Pettus did not attempt to engage [S.A.], rather, he (Officer Pettus) responded to [S.A.]'s engagement of him."

- "**Opinion: Assessment and Decision-Making.** Officer Pettus was definitively responsive to [S.A.]'s actions and behavior. Officer Pettus identified the threat posed by [S.A.] as such using all contextual cues available to him at the time of the interaction with [S.A.]. . .Officer Pettus was reactive to the decisions of [S.A.] and made rapid decisions regarding the control and detention of [S.A.] . . . In this incident, based on all the threat cues and the behavior of [S.A.], the probability was, from Officer Pettus' perspective, that [S.A.] would have assaulted Officer Pettus as described in his report."

- In Mr. Borden's analysis of "factors to determine reasonableness" under APD Policy: "With Officer Pettus walking away to avoid escalation as a deliberate tactic, [S.A.]'s decisions were his own and out of the control of Pettus. Officer Pettus became responsive to the reasonably perceived threat posed by [S.A.]. . . Based on the above bullet point, the officer's perspective, according to statements from Officer Stout and the visual confirmation of threatening behavior, was that [S.A.] posed an imminent physical threat of harm to Officer Pettus."

Statements of this nature are unequivocally barred by Rule 704(b), and any testimony Mr. Borden offers on Pettus' state of mind or intentions should be excluded.

> ii. **This Court should exclude Mr. Borden's opinions on the victim's medical condition or injuries suffered because medical testimony exceeds his scope of expertise.**

10

This Court should limit any statements from Mr. Borden related to the victim's medical condition or injuries as exceeding the scope of his expertise.

Mr. Borden's report states:

> "It is my opinion that the force being applied by Officer Pettus during the interaction with [S.A.] ceased immediately after [S.A.] complied and was placed in handcuffs and restrained. . . . It is also an objective fact that [S.A.] was not suffering from any significant injuries connected to the use of force."

(Dkt. 28 at 26.)

Mr. Borden is not a medical professional. He describes himself as "an expert in police performance dynamics as they pertain to use-of-force, use-of-force decision-making and reaction timing, police practice and policy, forensic video analysis and examination." (Dkt. 28 at 19.) His CV indicates no medical education, experience, or training. (*See* Dkt. 28 at 3–18.) Therefore, evaluating the extent of S.A.'s injuries exceeds the realm of Mr. Borden's expertise, and this Court should not allow him to opine on the extent and medical significance of S.A.'s injuries resulting from Pettus' use of force.

### iii. This Court should exclude testimony by Mr. Borden instructing the jury on, analyzing, or expounding upon on the legal standard governing Pettus' use of force.

This Court should exclude Mr. Borden's statements purporting to explain, expound upon, or present conclusions to the legal standards at issue in this case. The Federal Rules do not allow *any* witness—lay or expert—to testify to legal conclusions. *See United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017). Considering expert testimony on legal issues, consistent with Rule 704(a), the Ninth Circuit has repeatedly affirmed that "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate

11

issue of law." *See United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002), overruled on other grounds by *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) (en banc))); *see United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 337 (9th Cir. 2017). Moreover, the Ninth Circuit's prohibition of opinion testimony on an ultimate issue of law recognizes that, "[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *See United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (citing *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994); FED. R. EVID. 702(a), 704(a)).

Here, a dispositive question for the jury on Count One will be whether Pettus' use of force against S.A. was objectively reasonable under the circumstances. As such, any testimony that presents legal standards to the jury, analyzes the application of legal standards to the facts of this case, or otherwise expounds upon the legal standard should be excluded.

The following portions of Mr. Borden's proposed opinion and analysis provide a representative sample of testimony that proffers impermissible legal conclusions:

- Part 4.B.1–2 (Dkt. 28 at 26–27): improperly expounding upon and analyzing the standard established in *Graham v. Connor*, 490 U.S. 386 (1989), including interpreting the reference to *Graham* made in APD Policy and concluding that "Based on this element of police officer training and exposure to the objective standard outlined therein, Officer Pettus used force within the parameters outlined in APD Policy."

- Part 4.B.8.1–4 (Dkt. 28 at 29–31): improperly outlining the legal standard and factors used to analyze an officer's use of force under the "objective review,"

12

including extended legal interpretations that "judging an officer's actions based on what is known after the fact is not the standard captured in [*Graham*]. Policy, and the legal standard reflected therein, outline how force is judged, not how force is trained or how force is used in events that are always unique to themselves" and "[i]t is my opinion that an individual's general behavior is not what ultimately dictates the enforcement of laws; instead, it is an officer's discretionary authority. It is my opinion that if the laws are important enough to enforce, it is up to the officer to responsibly enforce those laws and minimize the need to use force."

- Part 7, Training re Force (Dkt. 28 at 33): quotes and interprets the legal standard set forth in *Graham* while improperly directing on which evidence to consider to reach those conclusions, as "peace officers are not required to use the least intrusive degree of force possible,' (*Graham v. Connor*) but may use only such force as is objectively reasonable under the circumstances. The question here is, what was the stimulus for the decision to use force? Police performance elements must be considered as referenced in this report, and the officer's orientation can only be derived from the statements and all corroborative evidence associated with the occurrence, to include video and audio recordings when available and transcribed recordings of both audio and video sources."

Statements of this nature are impermissible expert testimony on an ultimate issue of law. Thus, Mr. Borden's testimony must be limited to exclude statements on an ultimate issue of law.

### iv. This Court should exclude Mr. Borden's testimony resolving disputed facts, offered without clarifying that his opinion is one-sided and based on factual assumptions that comport only with Pettus' version of events.

This Court should exclude opinion testimony by Mr. Borden that purports to resolve disputed factual issues. Expert testimony is admissible only if it is helpful to the finder of fact. FED. R. EVID. 702. Testimony that merely tells the jury the result it should reach–or the facts it should find–is not admissible. *See* FED. R. EVID. 704 advisory committee's note to 1972 proposed rule (noting that Rules 403 and 702 protect against "the admission of opinions which would merely tell the jury what result to reach"); *Halsted*, 2012 WL

13

13054271 at *2.

There is a distinction between an expert testifying that a disputed fact actually occurred, and an expert giving an opinion based on factual assumptions, the validity of which is for the jury to determine. This Court has previously limited an APD police procedure expert's testimony to exclude "any opinion as to whether [APD] procedures were followed in this case absent express order of the Court during trial," and cautioned that the expert's "written report is an entirely one-sided opinion on the behavior of these officers, based solely on information provided by the officers themselves." *Berman v. Anchorage Police Dep't*, No. 3:04-CV-227 TMB, 2006 WL 5230016, at *3–4 (D. Alaska May 23, 2006). Here too, Mr. Borden's testimony includes both statements that opine on what factually occurred and otherwise permissible expert opinions which are too intertwined with Pettus' version of events while failing to clarify that assumption.

Therefore, the government moves that Mr. Borden's testimony should exclude statements that directly opine on whether a disputed fact occurred. Additionally, he should not provide any opinion without first clarifying that his opinion is based on factual assumptions.

> v. **This Court should exclude expert testimony that offers improper conclusions as to whether Pettus was reasonable in his use of force against S.A.**

Mr. Borden should not be permitted to offer conclusions on whether Pettus' use of force was lawful, reasonable, justified, or appropriate in his encounter with S.A. because the reasonableness determination is a factual matter for the jury to determine based on their consideration of all circumstances, as it requires interpreting the law and making factual

14

assumptions that encroach on the proper spheres of both the Court and the jury.

Opinions that merely tell the jury the result to reach are not admissible. *See* FED. R. EVID. 704 advisory committee's note. Although the Federal Rules of Evidence do not preclude an expert from opining about an ultimate issue, *see* FED. R. EVID. 704(a), the Court may bar such testimony when it is not helpful to the jury, *see* FED. R. EVID. 702(a), or when it might be unduly prejudicial, *see* FED. R. EVID. 403. *See United States v. Diaz*, 876 F.3d 1194, 1196-97 (9th Cir. 2017); *see also United States v. Schatzle*, 901 F.2d 252, 257 (2d Cir. 1990); *Falk v. Clarke*, 1990 WL 43581 at *5 (N.D. Ill. Apr. 3, 1990).

Here, the issue of whether Pettus' use of force was excessive is properly within the province of the jury. Whether Pettus' use of force was objectively reasonable requires the jury to consider whether the degree of force was necessary, or, in other words, whether the degree of force used against S.A. was warranted by the governmental interests at stake in the interaction. *See Graham*, 490 U.S. at 396. Mr. Borden's expert testimony will not assist the jury in making this determination. *See Seals v. Mitchell*, 2011 WL 1399245 at *9 (N.D. Cal. Apr. 13, 2011); *see also Halsted v. City of Portland*, 2012 WL 13054271 at *1-*2 (D. Ore. Mar. 7, 2012); *Shannon v. Koehler*, 2011 WL 10483363 at *29-*30 (N.D. Iowa Sep. 16, 2011) (reasoning that an expert's opinion concerning the reasonableness of an officer's conduct is a legal conclusion, not a fact-based opinion that might assist the jury); *United States v. Eberle*, 2008 WL 4858438 at *2-*3 (E.D. Mich. Nov. 10, 2008). The jury must determine the reasonableness of the force used by weighing all the facts and considering all factual circumstances. *See Deorle v. Rutherford*, 272 F.3d 1272, 1282–85 (9th Cir. 2001) (finding an officer's use of nondeadly force unreasonable only after consideration of

15

all factual circumstances, including number of police officers present; the pending arrival of negotiators; the nature of the victim's conduct (essentially disturbing the peace); the victim's compliance with the prior commands of the officers; the absence of any physical assault against the police officer; the victim having discarded his weapon when told to do so and being unarmed at the time he was assaulted, and the fact that the victim was walking on his own property in the police officer's direction with a can or bottle in his hand).

Therefore, this Court should exclude testimony offering conclusions on whether Pettus' use of force was reasonable.

> vi. **This Court should exclude Mr. Borden's testimony regarding forensic video analysis because he has not indicated what opinion he may offer and Defendant has not met the threshold requirements under Rule 16, 104(a) or 702.**

This Court should limit any statements from Mr. Borden related to video forensic analysis pursuant to Rules 104(a) and 702.

Mr. Borden's CV does not contain any educational degrees in video forensic analysis. Based on defendant's disclosures, Mr. Borden does not have the requisite training or education to provide expert testimony about video forensics. Defendant hasn't articulated how Mr. Borden's specialized knowledge will help the jury in determining a fact in issue, which is required by Rule 702.

Defendant's disclosures are deficient under Federal Rule of Criminal Procedure 16(b)(1)(C). Mr. Borden's report states a "frame analysis report is generated to reflect data used for constructing a reasonably accurate time line" and "is labeled as [Allen frmanalysis.xml]." (Dkt. 28 at 37.) The government has not received a file under this name in reciprocal discovery, consequently it cannot determine the methodology used, its

16

reliability, and how Mr. Borden applied these methods to this case. *See Daubert*, 509 U.S. at 592-94.

Defendant's disclosures are also insufficient because Mr. Borden's report does not provide an actual opinion on what his proposed testimony would be on this subject.

Therefore, this Court should exclude testimony regarding forensic video analysis.

> **vii. This Court should exclude Mr. Borden's testimony regarding "human performance factors" based on lack of qualifications and unsound methodology.**

The government objects to Mr. Borden's education, training and qualifications regarding "human performance factors" and his opinions involving defendant's conduct because it is based on pseudo-science, "Force Science," an unreliable methodology.

Mr. Borden's CV does not contain any educational and/or scientific degrees. Based on the defendant's disclosures, Mr. Borden does not have the requisite training or education to provide expert testimony about matters of human behavior and psychology.

Additionally, defendant has not met the threshold requirement for expert testimony on this topic. Rule 702 requires reliability demonstrated through sound methodology and an "analytical connection between the data, the methodology, and the expert's conclusions. *Dasho v. City of Fed. Way,* 101 F. Supp. 3d 1025, 1029-30 (W.D. Wash. 2015). Therefore, any testimony or opinions regarding "human performance factors" or "Force Science" should be excluded based on it being an unreliable methodology.

> **viii. This Court should exclude Mr. Borden's testimony or opinion on whether defendant's use of force was within APD policy because it exceeds the scope of his expertise.**

Mr. Borden should not be permitted to offer conclusions on whether Pettus' use of force was within the parameters outlined in APD Policy. According to Defendant's disclosures, Mr. Borden has no Alaska-based training or experience, and does not hold an Alaska Peace Officer's Standards and Training certificate. Further, according to Mr. Borden's report, it does not appear he reviewed Pettus' APD training or retraining file. Therefore, Mr. Borden's opinion on whether Pettus' actions were within APD policy should be excluded because it is not helpful to the jury. S*ee* F<small>ED</small>. R. E<small>VID</small>. 702(a).

### C. Permissible Expert Testimony

The scope of Mr. Borden's testimony should be limited to *national* use-of-force standards and generally accepted police practices. To assist the jury in their determinations, expert witnesses should be permitted to testify about law enforcement practices, tactics, techniques, and training, which are subjects beyond the common knowledge of the average juror. *See Bates v. King County*, 2007 WL 1412889 at *3 (W.D. Wash. May 9, 2007); *see also Seals*, 2011 WL 1399245 at *10.

In the Ninth Circuit, expert testimony in excessive force cases is generally admitted to establish the standards applicable to the use of force. *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (admitting expert discussion as to whether officers' conduct comported with law enforcement standards); *Larez v. City of L.A.*, 946 F.2d 630, 635 (9th Cir. 1991) (proper for experts to testify as to general police industry standards regarding police department's investigation of plaintiff's complaint); *Whitaker v. Maldanado*, CIV 07-264-TUC-CKJ, 2009 WL 1936803, at *3 (D. Ariz. July 2, 2009) (admitting expert to compare officers' actions to industry standard), with *Robinson v. Delgado*, CV 02-1538

18

NJV, 2010 WL 1838866 at *6 (N.D. Cal. May 3, 2010) (excluding expert testimony about excessive force but admitting testimony about prison standards); *Estate of Bojcic v. City of San Jose*, C05 3877 RS, 2007 WL 3314008 at *3 (N.D. Cal. Nov. 6, 2007) (expert admitted to provide opinion on reasonableness of officers' actions but not whether they exercised excessive force).

### III. Conclusion

For the foregoing reasons, the government respectfully requests that this Court limit the Defendant's expert testimony.

RESPECTFULLY SUBMITTED May 26, 2022 at Anchorage, Alaska.

S. LANE TUCKER
United States Attorney

s/ *Charisse Arce*
CHARISSE ARCE
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2022,
a true and correct copy of the foregoing
was served electronically on the following:

Clinton Campion, Esq.

*s/ Charisse Arce*
Office of the U.S. Attorney

19

Case 3:20-cr-00100-SLG-MMS   Document 63   Filed 05/26/22   Page 19 of 19